■ In the Matter of CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., et al., Appellants, v CHARLES SOPER, as Acting Director, Newark Developmental Center, Respondent. — Order reversed, with costs, and motion to confirm arbitrator's award granted. All concur, Cardamone, J. P., not participating. Memorandum: Petitioner Wanda Taft, an employee at the Newark Developmental Center, and petitioner CSEA appeal from an order at Special Term which denied petitioners' motion to confirm an arbitrator's award. Special Term directed a new hearing before a different arbitrator on the ground that the arbitrator who heard this case was guilty of misconduct because he refused to hear testimony from a mentally retarded witness patient at the center. The case arises from a March 13, 1979 incident at the developmental center where petitioner Taft, a therapy aid, was charged with five acts of misconduct involving alleged patient abuse. She was accused of slapping two patients and failing on three occasions to secure medical treatment for one of them. Following a hearing provided for under the collective bargaining agreement, she was exonerated with respect to the assault counts and found guilty of failing to secure medical treatment for which she received a 90-day suspension, without pay. The principal witness against petitioner Taft was a co-worker who testified with respect to all charges. The arbitrator questioned her credibility. The issue which caused Special Term to find that the arbitrator was guilty of misconduct was the arbitrator's refusal to hear the testimony of the victim of one of the alleged assaults — the other alleged victim had apparently been released from the center and was unavailable. The purpose of this person's testimony was to corroborate the testimony already given by petitioner's co-worker. Petitioner's attorney questioned this mental health patient's competency and demanded an opportunity to inspect her medical records. The arbitrator then ruled that the receipt of the patient's testimony was conditioned upon respondent releasing the medical records to petitioner's attorney. Upon respondent's refusal, the arbitrator would not hear her testimony. This refusal was the basis upon which Special Term concluded that the arbitrator was guilty of misconduct. We disagree. The scope of review of an arbitration award is much narrower than the scope of review of an order of Supreme Court or of a determination of an agency in the administrative process. (See Siegel, New York Practice, § 602, p 861.) As the Court of Appeals noted in *Matter of Sprinzen (Nomberg)* (46 NY2d 623, 629): "In furtherance of the laudable purposes served by permitting consenting parties to submit controversies to arbitration, the law has adopted a policy of noninterference,

with few exceptions, in this mode of dispute resolution * * * Thus, an arbitrator's award will not be vacated for errors of law and fact committed by the arbitrator". Grounds for vacating an award are enumerated in CPLR 7511. Paragraph 1 of subdivision (b) of the section provides that a court may vacate an award only if it finds that the rights of the moving party were prejudiced by corruption, fraud or misconduct in procuring the award. Special Term relied upon *Matter of Professional Staff Congress/City Univ. of N.Y. v Board of Higher Educ.* (39 NY2d 319, 323) ("One form * * * of misconduct is the refusal to hear pertinent and material evidence.") Here, however, the arbitrator did not "arbitrarily," refuse to hear evidence. Rather the arbitrator conditioned the receipt of the proffered testimony on the availability of the witness' medical file. The medical file is particularly critical in a case such as this because the witness concededly suffers from some type of a mental disease or defect. Although such person's competency as a witness may be proved by an examination of her present alertness and memory, the contents of her medical file may well prove crucial to the determination of her credibility and the state of her mental powers and faculties at the time of the incident. The records would be indispensable to effective cross-examination. While the records of patients in State facilities for the mentally disabled are confidential, they may be released pursuant to an order of a court of record. (Mental Hygiene Law, § 33.13, subd [c], par 1.) Since the State was the party offering the testimony of this witness, it was incumbent upon it to satisfy the condition of the arbitrator's ruling and obtain the medical records which were equally available to either side. Any question regarding their availability in this type of case was disposed of in *Matter of State of New York Off. of Mental Retardation & Dev. Disabilities v Mastracci* (77 AD2d 473, 476), where this court, discussing confidentiality of a patient's medical records when the patient was to be a witness in a disciplinary proceeding, stated: "[c]learly, confidentiality, on these facts, must yield to respondent's right to conduct an effective defense to the disciplinary action * * * [I]f the patient is called as a witness his credibility may be challenged through use of his records". (Appeal from order of Monroe Supreme Court, Wagner, J. — arbitration.) Present — Cardamone, J. P., Callahan, Doerr, Denman and Moule, JJ.