In the Matter of NEW YORK NEWS, INC., et al., Respondents. MARY VENTURA et al., Appellants; NATIONAL BROADCASTING COMPANY, INC., Intervenor-Respondent.

Second Department, November 20, 1985

**APPEARANCES OF COUNSEL**

*Caesar D. Cirigliano (Michele Maxian, Ivar Goldart, Steven Asin, Arnold Cohen* and *Russell Neufeld* of counsel; *John Nehila* on the brief), for Mary Ventura, appellant.

*Frederick A. O. Schwarz, Jr., Corporation Counsel (Francis F. Caputo* of counsel), for New York City Health and Hospitals Corporation, appellant.

*Patterson, Belknap, Webb & Tyler (Michael B. Mukasey* and

*Emily R. Remes* of counsel), and *Marjorie T. Coleman* for New York News, Inc., respondent; *Laura V. Jones* for CBS, Inc., respondent; *Squadron, Ellenoff, Plesent & Lehrer (Neal M. Goldman* and *Stuart Bondell* of counsel), for News Group Publications, Inc, respondent; and *Rogers & Wells (Richard N. Winfield* and *Kevin A. Fisher* of counsel), for Associated Press, respondent. (One brief filed.)

*Cahill Gordon & Reindel (Ellen L. Rosen* of counsel), for National Broadcasting Company, Inc., intervenor-respondent.

### OPINION OF THE COURT

Per Curiam.

On October 22, 1985, Catherine Costello, a 22-year-old accountant, was shoved into the path of an oncoming subway train in Manhattan. Charged with attempted murder and assault in the first degree for this crime was Mary Ventura, who was seized at the scene. The crime attracted immediate and extensive coverage by the various organs of the news media. Within a few days it was disclosed in the press that, about one month prior to the incident, Ms. Ventura had been hospitalized as a psychiatric patient at Kings County Hospital and was released from that institution after a judicial proceeding under the Mental Hygiene Law. A representative of the Health and Hospitals Corporation was quoted in the news media as declaring that the release had occurred over the objections of the psychiatrist who had testified at the proceeding. This was then denied by others allegedly conversant with what had taken place. By this time, both the name of the patient, the fact of her hospitalization, the fact that there had been a judicial proceeding, and, indeed, various other details concerning Ms. Ventura's alleged illness had become public.

With public interest in the tragedy and what had preceded it apparently quite intense, the New York News, Inc., applied to the Supreme Court, Kings County, pursuant to rule 694.7 (c) of this court (22 NYCRR) for release of the sealed transcript of the judicial proceeding that had preceded the release of Ms. Ventura. Special Term heard the parties, redacted the transcript, ordered its release, and stayed its own order pending an application to this court. Ms. Ventura and the New York City Health and Hospitals Corporation have separately appealed, opposing the release of any portion of the transcript. They have obtained a further stay of Special Term's order until this court determines the matter. The appellants' posi-

tion is simple: the news media have no standing under the Mental Hygiene Law to seek disclosure of any portion of the sealed transcript.

At the outset, it is apparent that the problem before us relates both to the legal power to release any portion of the sealed papers, and, if that exists, our discretionary power to decide the degree of unsealing. If Mental Hygiene Law § 9.31, the statute covering confidentiality, is sufficiently narrow and inflexible, then Special Term's order must be reversed. If the language of the statute reflects some degree of flexibility as to the parties entitled to view papers involved in Mental Hygiene Law proceedings, we must still decide whether any unsealing was proper in this case and, if so, whether the specific degree of unsealing was appropriate.

Mental Hygiene Law § 9.31 deals with the right of an involuntarily held mental patient to a hearing and requires that the patient be ordered released if not mentally ill or in need of retention. Subdivision (f) of section 9.31 provides: "The papers in any proceeding under this article which are filed with the county clerk shall be sealed and shall be exhibited only to the parties to the proceeding or someone properly interested, upon order of the court."

The words "someone properly interested" are obviously the key to subdivision (f). Unless the various organs of the print and broadcast media can be deemed "someone properly interested", none of them is entitled to view the transcript at all. Representing Ms. Ventura, Legal Aid counsel argues with much vigor that properly interested persons can only include persons such as those who have an interest in the patient's well-being *(see,* Mental Hygiene Law § 33.13), or who are parties to litigation where a patient's psychiatric history is placed in issue *(see, e.g., Matter of Civil Serv. Employees Assn. v Soper,* 84 AD2d 927, *affd* 56 NY2d 639), or who are parties to a State Medical Board competency proceeding *(Matter of State Bd. for Professional Med. Conduct v New York State Commr. of Mental Hygiene,* 64 AD2d 224), or those who require the sealed records for use in a Surrogate's Court proceeding *(Matter of Clayton,* 9 Misc 2d 63).

Although the parties approach the problem as if it is entirely a matter of first impression in New York, it is clear that this court has, in effect, interpreted the statute by the adoption of a rule pertaining to Mental Hygiene Law proceedings. Rule 694.7 (c) of the Appellate Division, Second Depart-

ment (22 NYCRR), provides that with reference to a hearing held to determine the mental condition of a person under the Mental Hygiene Law, "[r]epresentatives of the news media shall be admitted, subject to guidelines preserving confidentiality and privacy of the inmate, defendant or patient".

Rule 694.7 (c) represents clear recognition that under certain circumstances the news media may be "properly interested" in judicial proceedings under the Mental Hygiene Law. Clearly, if the "news media" could never be "properly interested" in Mental Hygiene Law hearings, their presence would have to be forbidden categorically. We have difficulty in discerning a great difference—particularly in principle—between news-media presence at a judicial hearing subject to guidelines intended to protect privacy and news-media viewing of a transcript redacted to protect privacy. Presence at a hearing reveals all the testimony while a redacted transcript does not. If, as appellants declared during oral argument, the information permitted to be disseminated by the news media after their viewing of such proceedings can be limited by guidelines, so can the information obtained upon a viewing of the sealed transcript. Indeed, in this case, Special Term applied guidelines in prohibiting the viewing of certain portions of the transcript to protect what remains of Ms. Ventura's privacy.

Having made these observations, we hasten to add that we intend no erosion of Mental Hygiene Law § 9.31, nor will we permit piecemeal destruction of the statute. But we do not believe that permitting the viewing of a redacted transcript in a case such as this—where both identity, hospitalization and other facts about Ms. Ventura are already public and have been widely disseminated—will erode the statute. Under the unique circumstances of this case, where the release of a mental patient was soon followed by tragedy and a heated public controversy over the Mental Hygiene Law proceeding that led to the release, the integrity of the judicial process would be significantly impaired if the entire proceeding were shielded from public view. On balance, with much of the patient's background and mental history already public, a limited release of information will serve the public interest without harming the patient. We see no 6th Amendment problem.

Accordingly, the order of Special Term should be affirmed, without costs or disbursements.

LAZER, J. P., THOMPSON, WEINSTEIN and NIEHOFF, JJ., concur.

Order of the Supreme Court, Kings County, dated October 25, 1985, affirmed, without costs or disbursements.