In the Matter of CENTRAL GENERAL HOSPITAL, INC., Appellant,
v LESLIE LUKASH, as Medical Examiner of the County of
Nassau, et al., Respondents.

Second Department, September 12, 1988

## APPEARANCES OF COUNSEL

*Irving A. Cohn, P. C. (Allan D. Goldstein* and *Robert A. Eagan* of counsel), for appellant.

*Edward T. O'Brien, County Attorney (Patricia M. Carroll* of counsel; *William S. Norden* on the brief), for respondents.

OPINION OF THE COURT

SPATT, J.

We are called upon to determine whether a hospital is entitled to receive copies of autopsy reports prepared by a County Medical Examiner with regard to patients who died while confined to the hospital when the attending pysician was unable to certify the cause of death. We hold that the educational value of the autopsy reports under these circumstances constitutes a "substantial interest" within the purview of County Law § 677 (3) (b), and therefore, the hospital is entitled to the autopsy reports.

The petitioner Central General Hospital, a licensed acute care hospital facility, sought the Nassau County Medical Examiner's reports of autopsies performed on 17 patients who died between July 1, 1986, and January 14, 1987, while confined to Central General Hospital and whose bodies were transferred to the Office of the Nassau County Medical Examiner for autopsies. County Law § 673 (1) prescribes the following circumstances under which the Medical Examiner acquires jurisdiction to investigate a death:

"(a) A violent death, whether by criminal violence, suicide or casualty;

"(b) A death caused by unlawful act or criminal neglect;

"(c) A death occurring in a suspicious, unusual or unexplained manner;

"(d) A death caused by suspected criminal abortion;

"(e) A death while unattended by a physician, so far as can be discovered, *or where no physician able to certify the cause of death as provided in public health law and in form as prescribed by the commissioner of health can be found;*

"(f) A death of a person confined in a public institution other than a hospital, infirmary or nursing home" (emphasis supplied).

In this case, the hospital's petition, submitted to the Supreme Court, Nassau County, averred that their "patient records for said patients do not include * * * the final diagnoses". On appeal, the hospital argues in its brief that "[w]ithout obtaining the autopsy reports * * * the Hospital is also unable to establish final diagnoses for these patients". The absence of the final diagnoses from the patients' records was not disputed by the respondents in the Supreme Court and is not contested on this appeal. Transfer of the bodies in ques-

tion from the petitioner to the respondents could only be made if the death fell within one of the above-listed categories. There is no indication in the record that any of the deaths at issue fit into categories specified in County Law § 673 (1) (a), (b), (c), (d) or (f). Thus, it is sufficiently clear that the bodies were transferred to the Medical Examiner pursuant to County Law § 673 (1) (e), namely, because of the inability to certify the cause of death.

County Law § 677 (3) (b) provides that the autopsy reports prepared by the Medical Examiner shall be made available under the following circumstances: "Such records shall be open to inspection by the district attorney of the county. Upon application of the personal representative, spouse or next of kin of the deceased to the coroner or the medical examiner, a copy of the autopsy report, as described in subdivision two of this section shall be furnished to such applicant. Upon proper application of any person who is or may be affected in a civil or criminal action by the contents of the record of any investigation, *or upon application of any person having a substantial interest therein, an order may be made by a court of record, or by a justice of the supreme court, that the record of that investigation be made available for his inspection, or that a transcript thereof be furnished to him, or both"* (emphasis supplied).

In the Supreme Court, the petitioner stated that it had a "substantial interest" in obtaining these reports, and advanced several reasons in support of its application. All but one of those reasons were unsubstantiated and thus properly rejected by the Supreme Court. However, the remaining reason—that an autopsy report is an important educational tool for the doctors and other medical personnel who treated the deceased patients—is an adequate reason for granting the request. Although this reason was not given primary attention in the petition, the petition did aver that: "petitioner Hospital requires copies of the Medical Examiner's reports of autopsy for reasons of furthering the knowledge and education of its medical staff. In the course of treating patients, physicians may observe symptoms of patients upon admission, but need the final diagnosis and findings of an autopsy to evaluate whether the patient's symptoms correspond to the final diagnosis and findings of the autopsy. This enables the physician to improve the quality of care which he renders to future patients since it allows him to better evaluate a patient's condition and treatment upon admission". This argument is

also asserted on appeal. Under these limited circumstances in which the deceased patients were sent to the Medical Examiner for autopsies when the cause of death was undetermined, the Supreme Court should have granted the petitioner's application.

The educational value of autopsy findings is well recognized in the field of medicine. The results of an autopsy can confirm or disprove the diagnosis of the attending physician and place that physician in a better position to treat patients with the same or similar illnesses in the future. Indeed, it would not be overly dramatic to surmise that the information obtained could save the life of another patient. It is, therefore, logical and reasonable to hold that the hospital's concern for furthering the education of its staff is a "substantial interest" within the meaning of County Law § 677 (3) (b) (cf., Matter of New York News, 113 AD2d 87, mod on other grounds 67 NY2d 472).

Additionally, it would be ironic that in situations wherein the information provided by an autopsy report would be most useful (e.g., when the attending physician is unable to certify the cause of death), the report is not readily accessible to the hospital staff. In cases where a person dies in a hospital and the attending physician is able to certify the cause of death, the autopsy, if one is performed, is done in the hospital and the results are readily accessible to the hospital staff (see, County Law § 673; Public Health Law § 4214). Certainly neither the hospital's interest in the outcome of the autopsy nor the educational value of the autopsy report are lessened simply by a change of the location of the performance of the autopsy.

Although the petitioner could have ascertained the cause of death by securing copies of the death certificates prepared by the Medical Examiner, it does not follow that the hospital should be precluded from also obtaining, upon proper application, the reports of the autopsies performed by the Medical Examiner on persons who died while confined to Central General Hospital when an attending physician is unable to certify the cause of death.

In contrast to death certificates which state only the cause of death in definite terms without elaboration of the "symptoms of disease or conditions resulting from disease" (Public Health Law § 4141 [4] [b], [c]), autopsy reports must "state every fact and circumstance tending to show the condition of the body and the cause and means or manner of death"

(County Law § 677 [2]). The County Law further provides that the Medical Examiner: "shall enter upon the record the pathological appearances and findings, embodying such information as may be prescribed by the commissioner of health, and append thereto the diagnosis of the cause of death and of the means or manner of death" (County Law § 677 [2]). In addition, "[a] detailed description of the findings, written during the progress of the autopsy, and the conclusions drawn therefrom shall, when completed, be filed in the office of the coroner or medical examiner" (County Law § 677 [2]).

Thus, the difference between the information contained in a death certificate and that contained in an autopsy report, in terms of both content and detail, is significant. For example, the death certificate would not ordinarily provide any toxicological information.

Furthermore, the respondents have been unable to point to any countervailing concerns militating against granting the petitioner's application. The respondents' contention that because "the State has the overeaching responsibility for health care * * * petitioner should address itself to the State if it has concerns on improving medical care" is unrealistic. There is no conceivable reason why individual hospitals and their staffs, as well as related responsible State officials and agencies, should not all concern themselves with and actively seek the best possible medical care for the public, including the most accurate and scientific tool in pathology, the autopsy report.

While our dissenting colleagues would consider releasing the autopsy report in a case where the deceased "suffered from a unique or exceedingly rare affliction" the advancement of medical science and the education of medical professionals is equally important whatever the nature of the fatal malady.

Finally, disclosure to the hospital in these narrowly defined circumstances does not implicate privacy concerns. A hospital, like the Medical Examiner, is required to maintain the confidentiality of all patient medical records. Hospital records are available only to hospital personnel. Other persons may have access to hospital records only with the patient's written consent. Moreover, such records can be removed from the hospital only by subpoena (see, CPLR 4504 [a]; 10 NYCRR 405.1026 [a]).

In this vein, the holding of *Herald Co. v Murray* (136 AD2d 954), does not support denial of the application in the instant

case. In *Herald,* the court held that the interest of a newspaper seeking autopsy reports and/or forms from the New York State Department of Motor Vehicles containing blood-alcohol test results for the purpose of preparing articles on the dangers of drunk driving was not "substantial" and, thus, did not satisfy the requirements of County Law § 677 (3) (b). The newspaper, unlike the petitioner hospital, was not subject to any regulations protecting the privacy of the deceased or the deceased's family. On the contrary, the apparent reason for obtaining the autopsy reports was to publish some of the data contained in the reports. Furthermore, once the record is given to a newspaper, it could be passed on to anyone without any restriction. Indeed, the primary purpose of newspapers is the dissemination of information. In contrast to the newspaper which was the appellant in *Herald,* in this case, the petitioner hospital sent the patients' bodies to the Medical Examiner for autopsies so that the final diagnoses and causes of death could be ascertained. Thus, the forwarding hospital has a unique and compelling interest in the information contained in the autopsy reports. Accordingly, the legislative concern for confidentiality reflected in the statute at issue is not undermined by disclosure under these limited circumstances.

Accordingly, the petitioner Central General Hospital has established that it has a substantial interest in the autopsy reports at issue and that it is entitled to such copies. Contrary to the characterization of our dissenting colleagues, this holding does not impose a broad sweeping rule which permits hospitals to obtain autopsy reports by alleging "educational" needs. In effect, our determination is limited to the narrow circumstances in which the party seeking the autopsy report is the very hospital in which the deceased died and which transferred the body to the Medical Examiner when the attending physician was unable to certify the cause of death. The order of the Supreme Court is, therefore, reversed and the petition is granted.

SULLIVAN, J. (dissenting). We cannot agree with either the conclusion reached by the majority, i.e., that the educational value of autopsy reports to treating physicians suffices in general as a "substantial interest" for obtaining them pursuant to County Law § 677 (3) (b), or that a "substantial interest" has been demonstrated by the petitioner in the case before us. Accordingly, we dissent and vote to affirm the order appealed from.

The petitioner, an acute care hospital situated in Nassau County, sought an order pursuant to County Law § 677 (3) (b), directing the respondent Medical Examiner to furnish it copies of the records of the investigation into and the diagnoses of the causes and means or manner of the deaths of 17 named individuals who died while patients in the petitioner hospital between July 1, 1986, and January 14, 1987, and whose bodies were transferred to the office of the Medical Examiner by the petitioner. As accurately noted by the majority, the petitioner advanced a number of contentions both in its petition and on this appeal to support its claim that it has a "substantial interest" in such records. The petitioner has primarily claimed throughout this proceeding that, pursuant to the Public Health Law and the regulations promulgated thereunder, the regulations of the Joint Committee on Accreditation of Hospitals (hereinafter JCAH), and the regulations of Medicare and Medicaid, a physician must attest to a final diagnosis for each patient and that the information in this case can only be obtained from the records sought herein. In a related argument, the petitioner also has claimed that these same regulations require that a copy of an autopsy report be included in each patient's medical records in order to make them complete, and that the failure to have this information *may* subject the petitioner to the imposition of sanctions by the New York State Department of Health, the possible loss of accreditation from JCAH, and the potential loss of reimbursement from Medicare and Medicaid. These have been the main arguments employed by the petitioner both in the Supreme Court and on the present appeal to establish its "substantial interest" in the Medical Examiner's records. We are in complete agreement with the majority's conclusion that these contentions are devoid of any merit.

Initially, the petitioner has failed to allege any previously imposed or presently threatened sanctions from any of the aforementioned agencies as a result of not having the reports it now seeks; hence, its claims of damage are premised upon pure speculation and conjecture and do not warrant serious consideration. Furthermore, it is clear that the final diagnosis in any case under the jurisdiction of the Medical Examiner's office is readily available to the petitioner. In most situations, the final diagnosis, including the cause of death, will be provided on the death certificate by the physician who attended the patient in the hospital *(see,* Public Health Law § 4141-a). In those cases where a hospital physician does not

prepare the death certificate, it will be prepared by the coroner or Medical Examiner, who similarly is required to set forth the cause or means of death (see, Public Health Law § 4143 [3]). This information may in turn be obtained by the petitioner from the local district registrar of vital statistics (see, Public Health Law § 4174). Hence, the availability to the petitioner of the causes of death in all cases seriously undermines its present claim that such information may only be obtained from the desired autopsy reports.

Equally unavailing is the petitioner's argument that the regulations of the New York State Department of Health and JCAH mandate the inclusion of a copy of the Medical Examiner's autopsy report in the hospital records. Indeed, common sense and logic dictate that these regulations require the filing of reports only for those autopsies performed by the hospital personnel pursuant to Public Health Law § 4210 (3) or § 4214 (see, 1984 Atty Gen [Inf Opns] 142); nor has the petitioner set forth any authority to the contrary. Thus, we agree with our colleagues that the aforementioned contentions of the petitioner, which constitute the overwhelming bulk of its petition and its brief on appeal, are without substance and fall woefully short of establishing a "substantial interest" within the purview of County Law § 677 (3) (b).

The majority opinion, however, effectively permits any hospital to obtain copies of the reports of autopsies performed by a Medical Examiner or a coroner's physician simply upon the hospital's vague and conclusory assertion that those reports may be of some aid to the continuing medical education of the physicians at the hospital. Significantly, this contention has been but briefly mentioned by the petitioner in this proceeding and has been accorded only the most cursory of treatments in the petitioner's appellate brief. The majority's acceptance of this argument dramatically alters the delicate balance of a carefully drawn statute.

The legislative scheme and intent in drafting County Law § 677 is clear. Investigatory reports, including autopsy records, prepared by Medical Examiners and Coroners are confidential and are not to be revealed to the public. The only persons to whom the Medical Examiner or a Coroner may release copies of these reports on his own authority are the District Attorney of the county, or the personal representative, spouse, or next of kin of the deceased. In keeping with its focused determination that autopsy reports remain confidential, the Legislature has taken great caution to amend the statute so as to permit

only a handful of specifically enumerated public officials to obtain copies of such reports or other specified examinations under certain limited circumstances. Hence, the Commissioner of Correctional Services and the Chairman of the Correction Medical Review board may receive copies of the reports related to the death of any inmate of a correctional facility (County Law § 677 [6]), the Commissioner of Mental Health, the Commissioner of Mental Retardation and Developmental Disabilities, the Director of the Mental Health Information Service (presently the Director of the Mental Hygiene Legal Service), the Chairman of the Commission on Quality of Care for the Mentally Disabled or the director of a mental hygiene facility may receive copies of the reports related to the death of anyone who was a patient or resident of a mental hygiene facility (County Law § 677 [7]), and the Commissioner of Motor Vehicles must receive the results of toxicological examinations for alcohol or controlled substances when the deceased has been the victim of a motor vehicle accident (County Law § 677 [5]). No similar exception to the confidentiality requirement for hospitals is expressed in the statute. Rather, the release of autopsy reports to any person or entity other than those mentioned above is prohibited absent the procurement of an order of a court of record authorizing such disclosure upon a showing that the applicant will be affected by the autopsy report in a civil or criminal action (see, e.g., People v Casey, 114 Misc 2d 589), or that he has a "substantial interest" in the report. While it is obvious to us that this "substantial interest" provision of the statute is supplied as a device to accommodate rare situations which were not readily identifiable to the Legislature and is to be used sparingly, our colleagues effectively create an automatic "substantial interest" that seriously threatens the legislatively ordained confidential status of autopsy reports. We submit that the fashioning of such a broad precept, which permits virtually any hospital to satisfy the "substantial interest" requirement of the statute merely by alleging in a conclusory manner that the reports are needed for educational purposes, establishes an exception which threatens to engulf the very rule of which it is born. Such a result, if warranted at all, is appropriately accomplished by legislative action rather than by judicial fiat.

We agree with the majority that autopsy reports are more detailed, and therefore of greater instructive value, than death certificates. We similarly concur in the finding of our colleagues that the continuing medical education of hospital

physicians is a laudable goal. Nevertheless, we cannot join in their conclusion that these factors, standing alone, automatically constitute a "substantial interest" within the meaning of County Law § 677 (3) (b). Indeed, the Appellate Division, Fourth Department, recently upheld the denial of a request by the press for certain Medical Examiner's records which were sought for the equally laudable purpose of publishing articles to educate the public on the dangers of drinking and driving (see, Herald Co. v Murray, 136 AD2d 954). In so doing, the court found that these allegations did not suffice to demonstrate that the press had a "substantial interest" in the records sought. We believe that a similar result should obtain in the case before us. The mere fact that public dissemination of the contents of autopsy reports is, as the majority notes, considerably less likely to occur in the present case can hardly be considered an adequate basis for overriding the clear language of the statute.

Even if we were to accept the majority's conclusion that the educational value of autopsy reports to treating physicians automatically creates a "substantial interest" in those cases where the physicians are unable to certify the cause of death, such a sweeping holding is not warranted by the scant record submitted by the petitioner in the present case.

County Law § 673 (1) sets forth six different categories of deaths which are within the jurisdiction of the Medical Examiner or Coroner to investigate: (1) violent deaths, whether by criminal violence, suicide or casualty, (2) deaths caused by unlawful act or criminal neglect, (3) deaths occurring in a suspicious, unusual or unexplained manner, (4) deaths caused by suspected criminal abortion, (5) deaths occurring while unattended by a physician or where no physician is able to certify the cause of death, and (6) deaths of persons confined in a public institution other than a hospital, infirmary, or nursing home. The majority bases its entire analysis concerning the educational value of the autopsy reports sought herein upon the premise that the bodies of the 17 named individuals in this case were transferred to the respondent Medical Examiner because the petitioner's physicians were unable to certify the cause of death for each patient. However, there is not a scintilla of evidence in the record before us which establishes that any of the 17 cases specified in the petition were transferred to the Medical Examiner's office due to the inability of the petitioner's physicians to determine the cause of death.

We cannot embrace the assumption, so eagerly engaged in by the majority, that this was in fact the reason for the transfers. Indeed, the language of the petition upon which our colleagues rely to support this supposition is totally unrelated to the petitioner's claim that the disclosure of the reports is necessary for educational purposes. Instead, the petitioner merely alleges that its records for the 17 individuals "do not include the findings of the autopsies and the final diagnoses and may, therefore, be considered to be incomplete", thus potentially subjecting the petitioner to sanctions from various medical agencies, a contention which the majority agrees is meritless. There simply is no statement in the record which indicates that the bodies were transferred to the Medical Examiner's office because of an inability to certify the cause of death, and the petitioner's counsel could not tell us the reason for the transfer of any of these cases to the Medical Examiner at oral argument, despite being asked to do so. Accordingly, even if we were to assume the validity of the majority's determination that a treating physician who is unable to certify the cause of a patient's death has an automatic "substantial interest" in the patient's autopsy report, we would nevertheless affirm in this case, as there is no proof that such an inability to certify the cause of death existed herein.

By the foregoing discussion, we do not mean to foreclose the possibility that, under sufficiently compelling circumstances, a hospital physician might have a "substantial interest" in the autopsy report of a particular patient so as to justify the release of the report. For example, concrete evidence demonstrating that the patient suffered from a unique or exceedingly rare affliction which proves baffling to the medical community might well constitute one such situation. However, what the majority characterizes as the "narrowly defined circumstances" supporting disclosure in the present case in reality create a broad rule whereby any hospital or treating physician, merely by employing the catchwords "educational value", will be able to obtain those very reports which the Legislature has so scrupulously attempted to keep confidential.

EIBER and KOOPER, JJ., concur with SPATT, J.; SULLIVAN, J., dissents and votes to affirm the order appealed from, with an opinion in which KUNZEMAN, J. P., concurs.

Ordered that the order is reversed, on the law, without costs or disbursements, the application is granted, and the respondents are directed to furnish copies of the requested reports within 30 days after service upon them of a copy of this decision and order, with notice of entry.