OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 On this appeal, we must decide whether petitioner, an inmate on California’s death row, has a "substantial interest” in certain records of the Nassau County Medical Examiner, so that he may inspect them. We conclude that the Appellate Division applied an erroneous legal standard and that in the circumstances presented, petitioner does have a substantial interest, as a matter of law, in at least some of the requested records. Accordingly, we reverse the dismissal of the petition and remit for further proceedings.
 

 I.
 

 In March 1981, Robert Rubane Diaz, a registered nurse, began work on the night shift in the intensive care unit (ICU) of a community hospital in California. In the next 3
 
 Vi
 
 weeks, at least 13 patients on the night shift suffered violent seizures, which were generally followed by cardiac and respiratory arrest. Nine of these patients died. Following closure of the ICU at that hospital, Diaz began work at a different hospital and within three days, while he was on duty, another patient, displaying the same symptoms, died. Diaz was thereafter arrested and charged with killing a total of 12 patients by injecting them with massive doses of lidocaine, a drug commonly used to control rhythm disturbances in the heart
 
 (People v Diaz,
 
 3 Cal 4th 495, 517, 834 P2d 1171, 1176 [1992],
 
 cert denied
 
 — US —, 113 S Ct 2356 [1993]). Diaz waived a jury trial, and after a bench trial was convicted and sentenced to death.
 

 At trial, experts testifying for the prosecution relied largely on three types of evidence to conclude that each of the 12 patients — at least 11 of whom received therapeutic doses of lidocaine — died of a massive overdose: first, the concentration of lidocaine in their body tissue upon autopsy; second, the evidence of seizures; and third, electrocardiograph (EKG) readings (3 Cal 4th, at 530-534, 834 P2d, at 1185-1187). On appeal
 
 *214
 
 to the California Supreme Court, Diaz attacked the sufficiency of this evidence. Although concluding that there was sufficient evidence to support the trial court’s finding that someone had administered large overdoses of lidocaine to the patients (3 Cal 4th, at 535, 834 P2d, at 1188), the court’s opinion suggests that the evidence was not beyond dispute.
 

 As the court noted, for example: "Although recorded cases involving massive overdoses of lidocaine are rare, prosecution experts, after reading the scanty literature on the subject, concluded that these [seizure] symptoms * * * would be the most likely response to a massive overdose of lidocaine.” (3 Cal 4th, at 531, 834 P2d, at 1186.) And responding to Diaz’s argument that the EKG readings were inconclusive: "although the possibility of other causes may reduce the weight to be attached to the evidence that the patients had broad QRS complexes [on their EKGs], this evidence was one link in the circumstantial chain of evidence that the patients died from overdoses of lidocaine, and was properly relied upon by the prosecution experts.” (3 Cal 4th, at 534, 834 P2d, at 1187.)
 

 The lidocaine concentration in the patients’ body tissues was thus important evidence of causation, but the significance of that evidence, too, "was hotly contested at trial” (3 Cal 4th, at 534, 834 P2d, at 1187).
 

 Following Diaz’s conviction, his appellate counsel learned of an unpublished doctoral dissertation titled "Lidocaine Toxicity,” authored in 1981 by W. Christopher Long, a graduate student at St. John’s University. Long was at the time a toxicologist with the Nassau County Medical Examiner’s office, and based his dissertation on measurements of lidocaine found in brain tissue of more than 140 decedents autopsied between 1976 and 1981. Twenty-four had brain tissue concentrations of 20 micrograms/gram or greater — an amount (according to the petition) the prosecution had claimed at trial was indicative of a lethal dose. Thus, Diaz argues, either these 24 were also victims of lethal doses of lidocaine or the prosecution expert testimony was seriously flawed.
 

 Because the Long dissertation identified patients not by name but only by Nassau County Medical Examiner case number, in the present petition Diaz seeks access to the Medical Examiner’s records to help establish his factual innocence. After reviewing the records to determine the identity and hospital of each decedent, Diaz’s representatives will then attempt to obtain the decedents’ hospital records to learn the
 
 *215
 
 exact dose of lidocaine administered and other variables such as the patient’s clinical condition and weight. After his experts (including Long) synthesize the information in the dissertation, autopsy reports and hospital records, Diaz intends to seek postconviction relief on the ground that "newly-discovered evidence” establishes no murders occurred.
 

 The petition before us, brought under County Law § 677 (3) (b) and CPLR article 4, involves only the Medical Examiner’s records. (We express no view on the availability of hospital records.) In this litigation Diaz has disavowed any interest in the decedents’ names, expressing willingness to accept redacted records and suggesting that disclosure can be coordinated with the hospitals in such a way that he will never learn the patients’ identities. Moreover, apparently recognizing the substantial administrative burden his request entails, Diaz has also offered to pay for the costs associated with searching for, redacting and copying the records.
 

 Supreme Court dismissed the petition, concluding that Diaz had "not demonstrated that his interest in the records is sufficiently substantial to overcome the general need to maintain the confidentiality of the records of the Medical Examiner.” The Appellate Division affirmed, noting that Diaz had "no direct and personal interest with respect to the individuals whose records he seeks” and that disclosure would undermine "the legislative concern for confidentiality, as reflected in the statute.” (194 AD2d 723, 724.) We granted Diaz’s motion for leave to appeal, and now reverse.
 

 II.
 

 With reference to autopsy reports, County Law § 677 (3) (b) provides:
 

 "Such records shall be open to inspection by the district attorney of the county. Upon application of the personal representative, spouse or next of kin of the deceased to the coroner or the medical examiner, a copy of the autopsy report, as described in subdivision two of this section shall be furnished to such applicant. Upon proper application of any person who is or may be affected in a civil or criminal action by the contents of the record of any investigation, or
 
 upon application of any person having a substantial interest therein, an order may be made by a court of record, or by a
 
 
 *216
 

 justice of the supreme court, that the record of that investigation be made available for his inspection, or that a transcript thereof be furnished to him, or both”
 
 (emphasis added).
 

 The statute thus identifies four categories of persons who may obtain access to autopsy reports. The District Attorney and close relatives of the decedent may obtain records as of right, while persons who “may be affected in a civil or criminal action” or anyone else with a “substantial interest” in the records, must make judicial application. Diaz seeks release of the records as someone with a "substantial interest” in them.
 

 The legal question before us is whether an applicant under that provision must have a “direct and personal interest” in the autopsy reports, as suggested by the Appellate Division, and if not, whether the circumstances presented establish a substantial interest as a matter of law.
 

 By creating a residual category of persons who may receive autopsy reports — anyone who can demonstrate a "substantial interest” in the records — it is plain that the Legislature did not intend to limit access only to the three enumerated classes of persons, or to persons who have a direct and personal interest in the records. Instead, the Legislature left open the possibility that a broader range of persons might obtain records, so long as a judicial officer is satisfied that the applicant’s interest in the records is “substantial” — itself a flexible term. Thus, we agree with Diaz that the Appellate Division applied an erroneous legal standard.
 

 In determining whether a substantial interest has been shown, a court should consider, among other things, the reason the records are sought, the importance of that reason, and the availability of the information from other sources. Assuming the applicant’s interest in the records is substantial, the court may then consider other factors — for example, confidentiality concerns — as part of its discretionary power under the statute.
 

 This two-step analytical framework is reflected in
 
 Matter of Central Gen. Hosp. v Lukash
 
 (140 AD2d 113,
 
 affd for reasons stated
 
 74 NY2d 619), the only case in which this Court considered the “substantial interest” requirement. There, a hospital sought autopsy reports for 17 deceased patients who were transferred to the Medical Examiner for autopsy. Because the attending physician in each case could not determine the cause of death, the hospital sought the autopsy
 
 *217
 
 reports to further the education of its staff. The Appellate Division, and this Court on appeal, agreed that this was a "substantial interest” within the statute:
 

 "The educational value of autopsy findings is well recognized in the field of medicine. The results of an autopsy can confirm or disprove the diagnosis of the attending physician and place that physician in a better position to treat patients with the same or similar illnesses in the future. Indeed, it would not be overly dramatic to surmise that the information obtained could save the life of another patient. It is, therefore, logical and reasonable to hold that the hospital’s concern for furthering the education of its staff is a 'substantial interest’ within the meaning of County Law § 677 (3) (b)” (140 AD2d, at 116).
 

 After determining that a substantial interest was established, the court then considered whether there were "any countervailing concerns militating against granting the petitioner’s application” (140 AD2d, at 117), and determined that privacy was not implicated because the hospital was required to keep all information confidential except in certain circumstances.
 

 In the present case, Diaz argues that the records will help him establish that no murders in fact occurred. There is a serious question whether Long’s dissertation and the follow-up information sought constitutes the type of "newly discovered evidence” that will be considered on Diaz’s applications for postconviction relief. Manifestly, if the "evidence” is unusable in vacating the death sentence, Diaz would have
 
 no
 
 interest in the records within the meaning of the statute.
 

 While we might be justified in denying the petition on that ground, or remitting for briefing and consideration of the question, in this unusual case we decline to do so. It is unwise to embroil the Nassau County Medical Examiner and the courts of this State in collateral litigation of an issue that may be central in the California State and Federal courts. Moreover, the willingness of the California courts to consider the evidence may turn on what is in fact uncovered.
 

 Consequently, in the unique circumstances of this case it is our view that Diaz has established the requisite substantial interest in the Medical Examiner’s records. These records may enable Diaz to show that he was convicted and sentenced to
 
 *218
 
 death for murders that did not occur. This asserted interest is at least on a par with the "staff education” identified in
 
 Central Gen. (supra).
 
 Moreover, the Long study appears to be the only instance where lidocaine concentrations in human tissue were studied on such a large scale, and thus the potentially valuable information is unavailable elsewhere.
 

 It is unclear, however, whether Diaz has a substantial interest in
 
 all
 
 of the cases considered by Long. Indeed, many of the decedents in Long’s report had minimal levels of lidocaine. On remittal, Supreme Court may consider this question. The court may also, in the exercise of discretion, fashion an appropriate order to balance any privacy concerns and Diaz’s interest in the records, and may wish to consider Diaz’s offer to defray redaction and production expenses.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court, Nassau County, for further proceedings in accordance with this opinion.
 

 Judges Simons, Titone, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order reversed, etc.