■ In the Matter of JAMES MITCHELL, Also Known as WAMEL ALLAH, Respondent, v ELLEN BORAKOVE as Public Affairs Director of the New York City Department of Health, et al., Appellants. [639 NYS2d 791]

Petitioner seeks disclosure of certain documents, worksheets and audiotape allegedly created in connection with the autopsy of Charles Freeman, Jr., whom petitioner was convicted of murdering in 1975.

Under the Freedom of Information Law (FOIL), records which must otherwise be made available to applicants need not be if they are specifically exempted from disclosure by State or Federal statute (Public Officers Law § 87 [2] [a]). Here such exemption exists with regard to the subject records under New York City Charter § 557 (g), which provides that the Chief Medical Examiner "shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality. Such records shall not be open to public inspection." (*See, Matter of Assakaf v Arden*, 210 AD2d 325.)

While the IAS Court, in reversing itself and ultimately granting the petition, relied upon the Court of Appeals decision in *Matter of Diaz v Lukash* (82 NY2d 211), that decision is not here apposite since the petitioner in that case was proceeding under section 677 (3) (b) of the County Law, which, under County Law § 2, has no application to New York City, whose counties are wholly contained within a city (*see, Matter of Scott v Chief Med. Examiner of City of N. Y.*, 179 AD2d 443). Indeed, the exemption of the City from County Law § 677 manifests the Legislature's intention to defer to the City Charter's regulation of such records within its jurisdictional bounds. Concur—Sullivan, J. P., Ellerin, Ross and Mazzarelli, JJ.

Tom, J., concurs in a memorandum as follows: In the underlying CPLR article 78 proceeding petitioner sought, pursuant to the Freedom of Information Law (Public Officers Law § 84 *et seq.* [FOIL]), to obtain from the Chief Medical Examiner, autopsy records of the individual whom petitioner was convicted of murdering.

On March 31, 1977, petitioner James Mitchell, also known as Wamel Allah, was convicted, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree and was sentenced to a term of imprisonment of from 25 years to life. Petitioner is presently serving his term of sentence. The Appellate Division, Second Department, affirmed the conviction (*People v Mitchell*, 70 AD2d 789, *rearg granted* 116 AD2d 744) and the Court of Appeals denied petitioner leave to appeal (67 NY2d 947). Petitioner thereafter moved for an order vacating his conviction, pursuant to CPL 440.10, asserting, *inter alia*, that the prosecution failed to turn over certain *Rosario* material consisting of records maintained by the Chief Medical Examiner's Office as well as an audiotape made during the autopsy of the murdered victim.

By decision and order entered January 13, 1994, the Supreme Court, Kings County (L. Priscilla Hall, J.), denied the motion, finding the audiotape and records of the Chief Medical Examiner's Office were not *Rosario* material. The court noted that petitioner provided no evidence that an audiotape or other records of the autopsy actually existed and further found that: the materials were equally available to the defense and the prosecution at or before the time of trial; if they did exist, the materials were not specifically requested from the People or by court-ordered subpoena; and petitioner had failed to demonstrate actual prejudice resulting from the absence of the material.

By letter to the Chief Medical Examiner's Office dated November 26, 1993, the petitioner made a FOIL request for a number of documents relating to the autopsy of Charles Freeman, Jr., the man whom petitioner murdered. Petitioner averred that the documents were relevant to his then pending post-conviction motion and that without the documents, he could "not adequatley *[sic]* demonstrate to the court that the withheld documents contribute[d] to the verdict, and gave the prosecution an unfair advantage."

By letter dated December 23, 1993, respondent Ellen Borakove, the Director of Public Affairs for the New York City Department of Health, denied petitioner's request, stating that Public Officers Law § 87 (2) (a) denied access to records specifi-

cally exempted from disclosure by State, Federal or local laws and that New York City Charter § 557 (g) provides that records of the Office of the Chief Medical Examiner shall not be open to the public. In the interim, by letter dated December 13, 1993, petitioner supplemented his original FOIL request, seeking to obtain the Chief Medical Examiner's "worksheets." By letter dated December 30, 1993, Ms. Borakove acknowledged petitioner's supplemental request, which was again denied pursuant to Public Officers Law § 87 (2) (a) and New York City Charter § 557 (g).

Petitioner subsequently appealed the denials to the General Counsel of the Department of Health and by letter dated January 12, 1993, the General Counsel sustained the denials pursuant to New York City Charter § 557 (g). Petitioner, by Order to Show Cause, then commenced the underlying article 78 proceeding for an order directing the Chief Medical Examiner to produce the autopsy audiotape and worksheets on the ground that they contained *Rosario* material. Petitioner maintained that: respondents failed to particularize the denials; he was requesting the material "as a means to vacate his Murder conviction"; and the material "contained possible scientific evidence relevant to his innocent *[sic]*."

Respondents thereafter cross-moved to dismiss the petition, detailing the history of the action and the various reasons for the denials of petitioner's FOIL requests. Respondents also annexed the affirmation of the Assistant District Attorney and the FOIL Appeals Officer for the Office of the Kings County District Attorney, who stated that she had reviewed her office's FOIL requests and had found that since petitioner never made a FOIL request for the records which are the subject of the petition, mandamus should not lie and the petition should be dismissed.

The IAS Court, by decision and order dated September 8, 1994, initially ruled that petitioner was not entitled to the records pursuant to New York City Charter § 557 (g) but, later, relying on the Court of Appeals decision in *Matter of Diaz v Lukash* (82 NY2d 211), granted the petition on the grounds that petitioner was making his request not as a public citizen, but as someone involved in a criminal action that may be affected by the content of the records and, thus, had a substantial interest in them. The court directed the Chief Medical Examiner's Office to release to petitioner "all autopsy records still in its possession relevant to Charles Freeman, Jr."

The IAS Court's reliance on the reasoning of *Matter of Diaz v Lukash (supra)* is misplaced. In *Diaz (supra, at 217)*, the

Court of Appeals, in concluding that the petitioner had "established the requisite substantial interest in the Medical Examiner's records" to entitle him to the release of those records, based its ruling on article 17-A of the County Law, specifically section 677 (3) (b), which provides, in pertinent part, that: "Such records shall be open to inspection by the district attorney of the county. * * * Upon proper application of any person who is or may be affected in a civil or criminal action by the contents of the record * * * *or upon application of any person having a substantial interest therein,* an order may be made by a court of record * * * that the record of that investigation be made available for his inspection" (emphasis added).

However, County Law § 670 provides that the provisions of article 17-A shall not be applicable if they are in conflict with a county charter or charter law adopted pursuant to the Municipal Home Rule Law. There is clearly a conflict between County Law § 677 and New York City Charter § 557 (g), which provides: "The chief medical examiner shall keep full and complete records in such form as may be provided by law. He shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is, in the judgment of the medical examiner in charge, any indication of criminality. *Such records shall not be open to public inspection.*" (Emphasis added.)

Further, County Law § 2 (a) clearly and expressly provides that New York County, where the records in question herein were allegedly generated and are allegedly stored, is wholly contained within a City and, therefore, beyond the jurisdiction of the County Law, rendering it inapplicable to the matter at bar (*see also, Matter of Scott v Chief Med. Examiner of City of N. Y.*, 179 AD2d 443, 444, *lv denied* 79 NY2d 758, *cert denied* 506 US 891). As a result, the IAS Court's reliance on *Diaz (supra)* was error.

Since County Law § 677 is not applicable to petitioner's FOIL request, we must examine whether New York City Charter § 557 (g) has the same force and effect as State law, and whether this section falls within the purview of Public Officers Law § 87 (2) (a), which states that: "Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that * * * *are specifically exempted from disclosure by state or federal statute*" (emphasis added).

Article III (§ 1) of the New York State Constitution provides

that "[t]he legislative power of this state shall be vested in the senate and assembly." However, it is a "familiar principle" that lawmaking authority can be delegated to a municipal corporation, which is a political subdivision of the State, and, indeed, cities have been empowered to legislate on a wide range of matters of local concern (*Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372, 376).

The granting of city charters, by which such power is delegated, is "purely a legislative function" which was originally exercised by the State Legislature "with or without regard to the wishes of the local population as the Legislature saw fit" (*Di Prima v Wagner,* 14 AD2d 36, 40, *affd* 10 NY2d 728). In 1923, the Home Rule Amendment to the New York State Constitution was passed which was intended to vest in the cities of the State increased control of their own property, affairs, and government (*Matter of Holland v Bankson,* 290 NY 267, 270, quoting *City of New York v Village of Lawrence,* 250 NY 429, 435; Richland, *Constitutional City Home Rule in New York,* 54 Colum L Rev 311 [1954]). Effective home rule has two basic principles: a limitation on the State Legislature from intruding upon matters of local concern; and an affirmative grant of power to the local governments to manage their own affairs (Cole, *Constitutional Home Rule in New York: "The Ghost of Home Rule,"* 59 St Johns L Rev 713 [1985]; Hyman, *Home Rule in New York 1941-1965 Retrospect and Prospect,* 15 Buff L Rev 335 [1965]). The present home rule provision in the Constitution provides, in pertinent part: "[E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government * * * (10) [t]he government, protection, order, conduct, safety, *health and well-being of persons or property therein.*" (NY Const, art IX, § 2 [c] [ii] [10].)

Accordingly, a city's power to adopt a new charter, or amend an existing one, has been codified by the Legislature* (Municipal Home Rule Law § 36), which makes it clear that the Legislature has conferred upon municipalities the power to adopt rules and regulations reasonably adapted to carry out

---

* Section 50 (1) of the Municipal Home Rule Law states: "It is the intention of the legislature by this chapter to provide for carrying into effect provisions of article nine of the constitution and the statute of local governments and to enable local governments to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to them under the terms and spirit of such article."

the purposes set forth in the Constitution, including the "grant-[ing] of power over matters relating to the health and well-being of inhabitants of the city" (*People v Cook*, 34 NY2d 100, 105; Municipal Home Rule Law § 10). The Charter section in question, established by Local Laws, 1977, No. 102 of the City of New York, falls within the health and well-being provisions.

As such, these duly adopted rules and regulations under the City Charter have the force and effect, and are as binding, as an enactment of the Legislature (*Matter of Mooney v Cohen*, 272 NY 33, 38; *Matter of LaGuardia v Smith*, 288 NY 1, 6-7; *Angueira v Brooklyn & Queens Tr. Corp.*, 263 App Div 43, 45; *Matter of Shannon B.*, 70 NY2d 458, 464-465 [Titone, J., dissenting: "It is well settled that the New York City Charter has the force of State law"]).

In view of the foregoing, and the clear mandate set forth in the Constitution as well as the Municipal Home Rule Law granting, through legislative delegation, the power to the City to regulate, *inter alia*, matters concerning health, the City Charter is cloaked with the authority of State law. Thus, New York City Charter § 557 (g) qualifies as an exemption under the provisions of FOIL, specifically Public Officers Law § 87 (2) (a) (*see*, *Matter of Assakaf v Arden*, 210 AD2d 325; *see also*, *Matter of Mullady v Bogard*, 153 Misc 2d 1018).

In *Matter of Morris v Martin* (55 NY2d 1026, *revg* 82 AD2d 965; *see also*, *Matter of Brownstone Publs. v New York City Dept. of Fin.*, 150 AD2d 185, *lv denied* 75 NY2d 791), the Court of Appeals rejected the Third Department's reasoning that an Administrative Code provision is, for all practical purposes, a State statute. However, in the matter at bar, we are dealing with a City Charter provision which, in my view, given its history as well as its Constitutional mandate, is a direct delegation of legislative authority and, therefore, is distinguishable from the Administrative Code provisions.

The Legislature's intent to preempt local legislation may be inferred from the nature of the subject matter being regulated and the purpose and scope of the State's legislative scheme (*Vatore v Commissioner of Consumer Affairs of City of N. Y.*, 83 NY2d 645). The enactment of County Law §§ 2 and 670, which exempt the application of County Law § 677, in permitting inspection of autopsy records by any person having a substantial interest therein, to the City of New York, is a clear indication that the Legislature intended to give the City government the autonomy to regulate the release of autopsy records as it sees fit.

In addition, to endorse the petitioner's position would result

in all of the New York City Chief Medical Examiner's files being open to any and all requests under FOIL with no safeguards whatsoever. This, surely, could not have been the intention of the Legislature in restricting County Law § 677 to only those counties without City limits. To hold that the Legislature had such an intention, as petitioner urges, not only opens the floodgates to the Chief Medical Examiner's files, placing an incredible burden upon that agency, but also disregards the privacy concerns of the families of the deceased whose remains have passed through that office *(see generally,* Public Officers Law § 87 [2] [b]; § 89 [2]).

Accordingly, I concur in the result reached by the majority and vote to dismiss the petition.