Janis L. Perry, Respondent, v Joseph A. Fiumano, Jr., Appellant.

Fourth Department, March 1, 1978

514

**APPEARANCES OF COUNSEL**

*Bruce O. Jacobs (Jon Brenizer* of counsel), for appellant.

*Alderman, Alderman, Samuels & Schepp (Bernard Samuels* and *Eric M. Alderman* of counsel), for respondent.

*Macht & Amdursky (Jon Brenizer* of counsel), for Onondaga Pastoral Counseling Center, *amicus curiae.*

## OPINION OF THE COURT

DILLON, J.

In this custody proceeding, petitioner seeks disclosure of records of the Onondaga Pastoral Counseling Center, Inc. (Counseling Center) pertaining to multiple consultations of the respondent with that agency prior to the termination of the marriage of the parties. Primarily, we are asked to determine whether the privilege which attaches to communications between a certified social worker and his client (CPLR 4508) renders such records unobtainable (see CPLR 3101, subd [b]). Since it is affirmatively argued that clients of the Counseling Center have the benefit of a total service which includes evaluation by both physicians and psychologists, we deal also, at least peripherally, with the physician-patient (CPLR 4504) and psychologist-client (CPLR 4507) privileges.

Petitioner and respondent were married in 1966 and are the parents of an 11-year-old son who is now in respondent's custody. In an effort to resolve matrimonial problems, they began utilizing the services of the Counseling Center in May, 1976. Initially the parties made regular visits to the Center where they were afforded both joint and private counseling. There came a time, undisclosed in the record, when the petitioner terminated counseling but the respondent continued. The Counseling Center's records reveal a total of 49 consultations by one or both of the parties.

The rehabilitative effort failed and a separation agreement was executed by the parties on August 17, 1976. While the agreement characterizes the custodial arrangement as "joint", by its terms actual custody of the child was awarded to the respondent "with reasonable rights of visitation" granted to the petitioner. The terms of the separation agreement were incorporated into a judgment of divorce entered in the Dominican Republic on October 11, 1976. Petitioner has since remarried and in February, 1977 she brought this habeas corpus proceeding in which she alleges, *inter alia,* that the respondent is irrational, suicidal and emotionally unstable, and consequently is unfit to care for the child. These allegations are denied by the respondent.

Upon petitioner's motion seeking a psychiatric examination of respondent, the court directed that both parties and the

child be examined by Dr. Frank Mills, with copies of his reports to be submitted to the attorneys for the parties. Thereafter petitioner moved for an order pursuant to CPLR 3121 (subd [b]) compelling the respondent to furnish written authorizations for the disclosure of the records of the Counseling Center and one Martha Brewster, a certified social worker at the Center, pertaining to the respondent's psychiatric, psychological and emotional condition. Petitioner's affidavit reasserts her opinion as to respondent's mental condition and alleges that she was advised by the said Martha Brewster that "the Respondent's psychiatric and emotional stability was in effect precarious". Special Term granted petitioner's motion, and respondent appeals. He contends that his communications with the social worker, and thus with all of those employed at the Counseling Center (see CPLR 4508), were made with the expectation of confidentiality and are privileged.

■■ Communications made in confidence are not protected purely because of their confidentiality, but may be kept secret only if premised upon a public policy expressed by statute or in furtherance of an overriding public concern of constitutional dimension (see, e.g., *People v Doe,* 61 AD2d 426, decided herewith). It was the rule at common law and remains the rule today, that it is everyman's duty to give evidence in a court of law. We are here concerned with three statutorily created exceptions to that rule, none of which existed at common law. Whether the protected relationship involves physician, psychologist or certified social worker, all share the common purpose of encouraging the patient or client fully to disclose the nature and details of his illness or his emotions without fear of later revelation by one in whom he placed his trust and confidence (see *Matter of Warrington [State of New York],* 303 NY 129, 135; *Yaron v Yaron,* 83 Misc 2d 276).

There is little appellate precedent to guide our deliberation of the case at bar, although the First Department has recognized that " 'despite the sacrosanct nature of the statutory prohibition', [the physician-patient privilege] may be waived or suspended for certain purposes, even if not for all purposes." *(Matter of Schulman v New York City Health & Hosps. Corp.,* 44 AD2d 482, 484, affd 38 NY2d 234.) The Second Department has ruled that the psychologist-client privilege is automatically waived by a party who actively contests custody *(Baecher v Baecher,* 58 AD2d 821). One trial court in a custody case has held that any communication

which is privileged when made remains privileged forever unless affirmatively waived (see *Yaron v Yaron,* 83 Misc 2d 276, *supra).* The prevailing trend at the *nisi prius* level, however, has been to carve out a limitation upon the privilege in cases involving the welfare and best interests of children (see *Matter of Do Vidio v Do Vidio,* 56 Misc 2d 79; *People ex rel. Chitty v Fitzgerald,* 40 Misc 2d 966; see, also, *Matter of Clear,* 58 Misc 2d 699, revd on other grounds *sub nom. Matter of Klug,* 32 AD2d 915). Much reliance is placed upon a balancing of interests test expressed in Wigmore. Privileged communications should not be disclosed unless "[t]he *injury* that would inure to the relation by the disclosure of the communications [is] *greater than the benefit* thereby gained for the correct disposal of litigation." (8 Wigmore, Evidence [McNaughton rev], § 2285, p 527; emphasis in original.)

Wigmore's test surely has relevance in a custody proceeding, as does the language of Judge Scileppi in *Koump v Smith* (25 NY2d 287). There it was held that "by bringing or defending a personal injury action in which mental or physical condition is affirmatively put in issue, a party *waives* the [physician-patient] privilege." (25 NY2d 287, 294, *supra,* emphasis in original.) While the rule in personal injury actions is limited "to cases in which a defendant affirmatively asserts the condition either by way of counterclaim or to excuse the conduct complained of by the plaintiff" (25 NY2d 287, 294, *supra),* it can safely be said that the mental and emotional state of a custodial parent is of great concern to the court regardless of the form in which the issue is presented. Nonetheless, waiver or suspension of statutory privileges is a drastic remedy which should only be granted upon a showing by the party seeking the examination of the protected records that a party's mental or emotional condition is in controversy. The affidavits seeking such relief "must contain evidentiary matter and not mere conclusory statements" (see *Koump v Smith,* 25 NY2d 287, 300, *supra).*

In its role as successor to the chancellor, the court acts as *parens patriae* in determining the custody of a minor child *(Finlay v Finlay,* 240 NY 429). That determination must be based solely upon the best interests of the child (Domestic Relations Law, §§ 70, 240) in accordance with the standard expected of a " 'wise, affectionate and careful parent' " *(Finlay v Finlay, supra,* p 433). The court's duty as protector of children is deeply rooted in Anglo-American law and tran-

scends other public policy interests. Indeed, it has been held that the rule of comity "must yield when it conflicts with the dominant domestic duty of the court to guard the welfare of its wards." *(Matter of Bachman v Mejias,* 1 NY2d 575, 581.)

The respondent argues that absent a legislative expression prohibiting the exercise of a privilege in custody cases, the courts should not judicially impose such a limitation. Apparent support for that view is found in *Matter of Investigation of Criminal Abortion in County of Kings* (286 App Div 270, mot for lv to app den 309 NY 1031) and cases therein cited, which recognize that statutes creating privileges must be given a broad and liberal construction in favor of the protection of confidential communications, while a statute waiving or suspending the privilege must be "strictly construed and confined to the specific exception created by it" (286 App Div 270, 274, *supra).*

We find it significant, however, that the Legislature has spoken in formulating the State's policy interest in the welfare of children. The purpose of article 10 of the Family Court Act, which governs child protective proceedings, is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" and to provide a procedure "for determining when the state * * * may intervene against the wishes of a parent on behalf of a child so that his needs are properly met" (Family Ct Act, § 1011). In furtherance of that policy, privileges attaching to communications between husband and wife, physician and patient, and social worker and client are not grounds for excluding otherwise admissible evidence in any proceeding under article 10 (Family Ct Act, § 1046, subd [a], par [vii]).

█ Additionally, we note that a certified social worker is not required to treat as confidential a communication which reveals the contemplation of a "harmful act" (CPLR 4508, subd 2). At least then, to the extent of our concern with that privilege, it does not strain logic to conclude that statements made or information given by the respondent to the social worker bearing adversely upon the health, safety and welfare of the infant are not privileged within the contemplation of the statute and are subject to compulsory disclosure *(Community Serv. Soc. v Welfare Inspector Gen. of State of N. Y.,* 91 Misc 2d 383; see, also, *People v Brooks,* 50 AD2d 319, 320, revd on other grounds 42 NY2d 866).

█ Thus we do not find it an impermissible encroachment

upon the legislative function to hold that where it is demonstrated that invasion of protected communications between a party and a physician, psychologist or social worker is necessary and material to a determination of custody the rule of privilege protecting such communications must yield to the "dominant * * * duty of the court to guard the welfare of its wards" (*Matter of Bachman v Mejias*, 1 NY2d 575, 581, *supra; Matter of Do Vidio v Do Vidio*, 56 Misc 2d 79, 80, *supra*).

It is not our purpose, however, to discourage troubled parents from seeking professional assistance from the many public and private counseling agencies which are available to aid in relaxing matrimonial tensions and preserving family entities. Nor would we want a custodial parent to forgo needed psychiatric or other help out of fear that confidences will later be unfairly and unnecessarily revealed through the animus act of a present or former spouse.

■ To avoid such potentially chilling effects, it is apparent that these privileges may not cavalierly be ignored or lightly cast aside. There first must be a showing beyond "mere conclusory statements" that resolution of the custody issue requires revelation of the protected material. While the court need not adhere to strict adversary concepts in custody cases (*Kesseler v Kesseler*, 10 NY2d 445; *Johnson v Johnson*, 25 AD2d 672), we are not unmindful that the petitioner's moving papers are drawn in vague, generalized terms and may not readily be interpreted as alleging that respondent's capacity to care for his son has diminished in the brief period since the petitioner agreed to give custody to respondent and later reaffirmed that agreement by causing its incorporation into a divorce decree.

We may reasonably conclude from petitioner's affidavit that much if not all of the conduct complained of occurred during a period of matrimonial turbulence, a time when ordinarily the judgment and rationality of marital partners is severely tested. She offers no meaningful insight into respondent's capacity, unfettered by marital tensions, to provide for the best interests of the child. After all, it will be respondent's *present* and *future* capacity to meet that parental obligation that will be of foremost concern to the trial court (see *Matter of Do Vidio v Do Vidio*, 56 Misc 2d 79, 80-81, *supra*).

■ Petitioner offers purely conclusory and largely inadmissible opinions as to respondent's condition. Her other assertions relating to his alleged threats are insufficient to support the

kind of disclosure the petitioner seeks. We would hold otherwise, of course, upon a showing that the records of the Counseling Center are required by the court-appointed psychiatrist in aid of a complete evaluation of respondent's mental and emotional condition. Whether such material is essential to the doctor's diagnosis and prognosis can best be determined by him. Petitioner's unfounded speculation that the privileged matter "could be of utmost importance" to the psychiatrist is not at all helpful.

The order should be reversed and the motion denied.

MARSH, P. J., MOULE, SIMONS and WITMER, JJ., concur.

Order unanimously reversed, without costs, and motion denied.