In the Matter of STATE OF NEW YORK—OFFICE OF MENTAL RETARDATION AND DEVELOPMENT DISABILITIES, Appellant, v EUGENE MASTRACCI, Respondent.

Fourth Department, December 12, 1980

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Thomas Maroney, William J. Kogan* and *Nancy S. Jones,* of counsel), for appellant.

*Roemer & Featherstonaugh (Michael J. Smith* of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

On July 16, 1979 the petitioner-appellant New York State Office of Mental Retardation and Developmental Disabilities issued a notice of discipline to the respondent Eugene Mastracci charging him with eight instances of misconduct involving six patients and seeking to terminate his employment at the Newark Developmental Center. The charges alleged specific acts of physical assault against four of the patients occurring generally after June 1, 1979. Pursuant to the collective bargaining agreement between the State and the Civil Service Employees Association, Inc., the matter was scheduled for arbitration on October 18, 1979. On September 20, 1979 respondent's counsel issued a subpoena duces tecum requiring that the patient care records of the four allegedly assaulted center residents, limited to the time period coinciding with the charges, be produced at the arbitration hearing. On November 25, 1979 Special Term denied the State's motion to quash the subpoena and ordered that the records be released to the arbitrator "for his in camera inspection and determination of what entries are relevant and material" to the arbitration proceeding.

The issue before the court centers upon the proper methodology for releasing confidential mental hygiene records in a disciplinary arbitration proceeding. The State contends that the subpoena to obtain such records should be quashed because it was issued by respondent's attorney; the records are not relevant because the four patients whose records are under subpoena "were not being called" as witnesses at the arbitration; and confidential treatment records, in whole or in part, may be released only by a court of record, which may not delegate this responsibility to an arbitrator.

In our analysis we note first that there has been no

request for discovery, and that a subpoena duces tecum and a denial of a motion to quash neither convert the proceeding to one seeking discovery nor equate the denial of the motion to a disclosure order. The purpose of a subpoena is to enable a party to prove his case with testimony of witnesses or documentary evidence pertinent to the controversy by compelling the attendance of such witnesses and the production of such evidence (7 Carmody-Wait 2d, NY Prac, § 54:2). A subpoena is not designed and may not be used to further pretrial discovery and production of documents for inspection and other purposes (CPLR 3120) or, in the circumstances of this case, to ascertain the existence of evidence.

▇ Article 33 of the Mental Hygiene Law safeguards the rights of patients in State facilities for the mentally disabled. The clinical records of these patients are immune from production by way of a subpoena duces tecum issued by an attorney since such records may not be released "to any person or agency outside of the department" except, *inter alia*, "pursuant to an order of a court of record" (Mental Hygiene Law, § 33.13, subd [c]). We hold, however, that the Supreme Court's order, upon the State's motion to quash the subpoena duces tecum, cured any procedural irregularity in the subpoena's issuance and requirements and fulfilled the purposes of the Mental Hygiene Law (cf. *Matter of New York State Bd. of Elections*, 49 AD2d 806). Special Term need not go through the useless motion of quashing this subpoena only to have respondent seek the records properly (Mental Hygiene Law, § 33.13, subd [c]; CPLR 2307, subd [a]).

The fundamental issue before this court concerns the appropriateness of the Supreme Court order directing the release of these patients' clinical records. Although the court has the power to release the records, an order of release should be limited to a "proper case" which depends on whether the records will serve some reasonable purpose (see, generally, *Matter of Hirshfield v Craig*, 239 NY 98) and bear some relevancy and materiality to the issues involved in the underlying dispute (7 Carmody-Wait 2d, NY Prac, § 54:21). In its moving papers the State fails to demonstrate a basis to withhold the records, or a portion of

them, other than to claim that "the information sought is not material or relevant" since "[n]one of the patients alleged to have been so abused have been called by [the State] as witnesses in the disciplinary arbitration". Its argument is that the clinical record is not relevant unless and, impliedly, until the patient testifies in the proceeding.

The medical portions of patient records are generally treated differently from the remainder of the record because such parts are privileged communications (see CPLR 4504, 4507, 4508) whose production, in the absence of a waiver, for the most part cannot be compelled where the privilege is asserted (7 Carmody-Wait 2d, NY Prac, § 54:16). The principle of waiver has no application in this case, however, since the patients are not parties to the proceeding and their role is that of witnesses.

Here the need for maintaining the confidentiality of the patients' records must be balanced against the concern for respondent's rights and any adverse impact on his reputation, livelihood and future employment. Clearly, confidentiality, on these facts, must yield to respondent's right to conduct an effective defense to the disciplinary action. "The confidentiality accorded the hospital records of mental patients by the Mental Hygiene Law is not absolute. In a proper case, it must yield to the needs of justice" (Matter of Civil Serv. Employees Assn. [Director, Manhattan Psychiatric Center], 72 AD2d 526; see, also, Perry v Fiumano, 61 AD2d 512, 519). Certainly, if the patient is called as a witness his credibility may be challenged through use of his records (see Matter of Camacho v Iafrate, 66 AD2d 799, lv to app dsmd 46 NY2d 897). Further, regardless of whether the patient is called as a witness, his records may be relevant and material to show his behavior, any propensity for violence, as well as his physical condition before and after any alleged assault (Matter of Bremiller v Miller, 79 Misc 2d 244). Special Term thus correctly refused to quash the subpoena.

The State next argues that the court should have determined what portions of the records are relevant and material and at least quashed the subpoena in part. A court may quash a subpoena duces tecum where it is obvious that the

requested information is "utterly irrelevant to any proper inquiry" *(Matter of Dairymen's League Co-op. Assn. v Murtagh,* 274 App Div 591, 595, affd 299 NY 634). However, "it is for the trial court and not for the judge or justice to whom the application for the subpoena is made to rule upon the competency and admissibility of evidence" *(Friedeberg v Haffen,* 162 App Div 79, 80; see, also, 7 Carmody-Wait 2d, NY Prac, § 54:21, p 743). It is hazardous to anticipate the use sought for subpoenaed records *(Del Vecchio v White Plains Unit, Westchester County Ch., Civ. Serv. Employees Assn., Local 860,* 64 AD2d 975). Only in a trial setting can a judgment be made as to the materiality or relevance of records and can the records be dealt with in light of the evidence before a trier of the facts who is peculiarly equipped to deal with these issues *(Matter of Edge Ho Holding Corp.,* 256 NY 374, 381-382).

These same considerations must apply to a court's exercise of its discretion to direct the release of confidential records under the authority in the Mental Hygiene Law (Mental Hygiene Law, § 33.13). This is particularly true where, as here, the record before the court does not disclose the contents of the limited subpoenaed clinical records and contains virtually no information as to the nature of the case against respondent, the type of evidence which will be presented at the hearing, the identity of the witnesses to the alleged acts of misconduct or the means the State will adopt to present its case.

It is premature to decide whether a proper case has been established for releasing these records, or parts thereof, to respondent and invading the confidentiality attached to them. As we pointed out in *Perry v Fiumano* (61 AD2d 512, 519, *supra* [DILLON, J.]) "There first must be a showing beyond 'mere conclusory statements' that resolution of the * * * issue requires revelation of the protected material." It must also be noted that it is not within the province of the court to tell the arbitrator how to conduct the hearing, although there can be no doubt that the court possesses discretion to attach conditions to a release of the records. Special Term did not err, therefore, by not determining which portions of the records should be admissible at the

hearing. That determination was properly left for the arbitrator.

Accordingly, the order of Special Term should be affirmed and the State directed to produce the clinical records which shall be first examined by the arbitrator. Disclosure of their contents to respondent, if any, should be limited to the issues of the competency and credibility of the witness, and of the patient's physical condition and propensity for violence (see *People ex rel. Hickox v Hickox*, 64 AD2d 412). The identity of the patients should be concealed and remain confidential.

CARDAMONE, J. P., HANCOCK, JR., DOERR and MOULE, JJ., concur.

Order unanimously affirmed, with costs.