Hillsborough
No. 85-093

JAMES D. BUTTERICK

v.

KAREN J. BUTTERICK

March 3, 1986

*Wiggin & Nourie*, of Manchester (*L. Jonathan Ross* and *Karen L. Heller* on the brief, and *Mr. Ross* orally), for the plaintiff.

*James M. Winston*, of Manchester, by brief and orally, for the defendant.

KING, C.J. Four years after the parties' divorce the plaintiff petitioned the superior court for a change in physical custody of their two children and for a reduction in the amount of support he was required to pay the defendant. The Superior Court (*Dalianis*, J.) approved a Master's (*Alice S. Love*, Esq.) recommendation that physical custody of the parties' older child be awarded to the plaintiff. The Court (*Flynn*, J.) later also approved a second Master's (*Larry B. Pletcher*, Esq.) recommendation that the amount of support the plaintiff should pay the defendant be reduced. The defendant appeals, and we affirm in part and reverse in part.

The parties were divorced in 1980. Under a stipulation, incorporated into the divorce decree, the parties had joint legal custody of their two sons, who were born in November 1970 and February 1973, with the defendant having physical custody. The parties stipulated that modifications of physical custody of their children would be governed by the best interests of the child standard of *Del Pozzo v. Del Pozzo*, 113 N.H. 436, 309 A.2d 151 (1973) rather than the stricter standard of *Perreault v. Cook*, 114 N.H. 440, 322 A.2d 610 (1974), which requires a showing that there is a strong possibility of harm to the child if he remains with the custodial parent. The plaintiff also agreed to pay the unallocated sum of $2,500 per month for the defendant's and the children's support.

In 1984, the plaintiff filed a petition for a change in physical custody of both children. After a hearing, of which no record was made, Marital Master Love recommended that the plaintiff be awarded

physical custody of only the older child, who was then 13 years old. In her written recommendation, dated May 30, 1984, the master noted that "the parties specifically agreed that the future residence of the children would be determined by the 'best interest' standard as opposed to the stricter standard set forth in *Perreault v. Cook* . . . ." The master also noted that the preference both children expressed as to where they wanted to live "was given great weight," and that their preferences were evaluated in light of (a) the children's ages, intelligence and maturities, (b) the intensity with which the preferences were advanced and (c) whether the preferences were based upon undesirable or improper influences. In an apparent miscalculation, the master noted that the older child was fourteen years old.

■ We first consider the defendant's argument that the master erroneously failed to apply the *Perreault* standard. In the case of *Perreault v. Cook*, 114 N.H. 440, 322 A.2d 610, we set out the standard governing modification of child physical custody awards. "The relationship established by the custody award should not be disturbed unless the moving party demonstrates that the circumstances affecting the welfare of the child have been so greatly altered that there is a strong possibility the child will be harmed if he continues to live under the present arrangement." *Id.* at 443, 322 A.2d at 612.

■ The rationale underlying the *Perreault* standard is "concern for the welfare of the child and the recognition of the importance of stable family relationships to the healthy psychological development of children." *Richards v. Richards*, 125 N.H. 331, 333, 480 A.2d 155, 157 (1984).

■ The *Perreault* standard is generally the correct standard for trial judges to employ in considering petitions for modification of child custody decrees; therefore, the fact that the parties agreed, in a divorce decree stipulation, to apply a different standard should be given no effect by the superior court. *Cf. Taylor v. Taylor*, 108 N.H. 193, 230 A.2d 737 (1967) (supplemental agreement by parties modifying alimony award was not binding on the court). In the present case, it is clear from the master's written recommendation that she failed to apply the *Perreault* standard. Nevertheless, we uphold the trial court's award of custody of the parties' older child to the plaintiff.

■ We reach this decision because we recognize that the *Perreault* standard is inadequate to guard the welfare and healthy psychological development of a child where, as in this case, a trial court finds before it a child who has clearly reached the age of mature

judgment and who expresses a strong desire to live with a different parent. In such a case, the trial court, in order to properly serve the interests of the mature child, must be free to consider the child's wishes.

■ We hold that a trial judge in a custody modification case such as this one may, within his sound discretion, find that a minor is of sufficient maturity to make a sound judgment about his proper custody. Having made this finding, the judge may then give substantial weight to the preference of the mature minor as to the parent with whom he wants to live. The trial judge must also give due consideration, as the trial court did in this case, to other factors such as whether the minor's preference was based on undesirable or improper influences.

■■ We continue to believe that "[t]he shuffling of a child back and forth between a father and mother can destroy his sense of security, confuse his emotions, and greatly disrupt his growth as an individual." *Perreault v. Cook*, 114 N.H. at 443, 322 A.2d at 612 (citations omitted). Nevertheless, common sense tells us that a child, though still a minor, will often be sufficiently mature to play a large part in deciding that he needs a different custodial parent. In *Provencal v. Provencal*, 122 N.H. 793, 451 A.2d 374 (1982), a case involving the initial physical custody determination for a mature teenager after a divorce, we noted that at age fourteen, a child's preference for a particular physical custodian is usually going to be crucial. *Id.* at 799, 451 A.2d at 378. *See* RSA 463:14 (1983) (minor over fourteen may elect guardian). We do not hold that age 14 is necessarily the age when minor children become mature. Some will gain sufficient maturity earlier, others later. We leave the determination of whether a child is mature to the sound discretion of the trial judge.

■ "Questions of custody are primarily problems for the trial court, and unless it can be said that no rational trier of fact could come to the conclusion that the trial court has reached, it will not be disturbed." *Doe v. Doe*, 119 N.H. 773, 776, 408 A.2d 785, 787 (1979) (citing *Starkeson v. Starkeson*, 119 N.H. 78, 80–81, 397 A.2d 1043, 1045 (1979)). "When there is no transcript of the proceedings before the master, as in the instant case, this court is tightly constrained in reviewing *facts* found by a master. In the absence of a transcript, the evidence is presumed to support the result reached below." *Cornforth v. Cornforth*, 123 N.H. 61, 63, 455 A.2d 1049, 1050 (1983) (citations omitted) (emphasis in original). In the present case, on the record before us, we hold that a rational trier of fact could conclude that the plaintiff should be awarded physical custody of the parties' older child.

We next consider the defendant's argument that the master erred in reducing the support payments. The trial court's decree ordering a change in physical custody was entered June 1, 1984. In October 1984, prior to a hearing on his petition for a reduction in support payments, the plaintiff unilaterally reduced his monthly payments from $2,500 to $1,500 per month. In January 1985, after a hearing, Master Pletcher recommended that the plaintiff be required to pay $2,100 per month in support to the defendant, a reduction of $400 per month from the 1980 stipulation.

In his written report, the master found, in pertinent part, that:

> "Pursuant to court order, primary physical residence of one child was changed to Plaintiff's residence . . . . [The] master finds this physical change of residence to be a substantial change in financial circumstances. However, it is also clear that although Plaintiff's costs have increased, his income has also substantially increased since 1980, and that the financial 'savings' to Defendant because her oldest son no longer lives with her certainly do not approach a proportionate percentage of the present $2,500/month amount."

"To obtain a modification of support or alimony obligations, the [party seeking a modification] must show such a change in circumstances of the parties as to make the continuance of the original order 'improper and unfair.'" *Noddin v. Noddin,* 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983) (quoting *Fortuna v. Fortuna,* 103 N.H. 547, 548, 176 A.2d 708, 709 (1961)). "Modification orders are measured in terms of the needs of the parties and their respective abilities to meet those needs, and trial courts, of necessity, are accorded wide discretion in regard to these determinations." *Noddin, supra* at 75, 455 A.2d at 1053 (citation omitted). Upon review in this court, "[a] modification of a support order 'will be set aside only if it clearly appears on the evidence that there has been an abuse of judicial discretion.'" *Noddin, supra* at 75, 455 A.2d at 1053 (quoting *Douglas v. Douglas,* 109 N.H. 41, 42, 242 A.2d 78, 79 (1968)).

On our reading of the transcript of the hearing before the master on the request for a reduction in support payments, we find that the master abused his discretion in reducing the amount of support plaintiff was required to pay defendant. The only evidence in favor of a reduction in support was that the plaintiff now had physical custody of his oldest son, was sending that child to a private school, and had become responsible for much of the support of his

second wife's children by her earlier marriage. The evidence against reduced support for the defendant was substantial. The defendant's monthly expenses were only minimally reduced when she lost physical custody of her older son. The plaintiff's monthly income increased more than twenty percent from the time the stipulation was entered into in 1980 to the time the modification of support was granted in 1985. The plaintiff reported that he had a $7,045 net monthly income during 1984. By his own admission, increases in plaintiff's income kept pace with increases in the cost-of-living. The defendant's support payments had not likewise kept pace with inflation in that same period. When the plaintiff was asked whether it would "inhibit [his] lifestyle" to continue to pay $2,500 per month in support for his ex-wife and their younger son, he answered "No." Therefore, the trial court erred in modifying the plaintiff's support obligations. *See Noddin v. Noddin supra; see also Hannemann v. Newcomb,* 125 N.H. 289, 480 A.2d 132 (1984); *Russman v. Russman,* 124 N.H. 593, 474 A.2d 1017 (1984).

*Affirmed in part and reversed in part.*

All concurred.