Hillsborough-northern judicial district
No. 2005-002

IN THE MATTER OF KATHLEEN QUIGLEY BERG AND EUGENE E. BERG

Argued: July 13, 2005
Opinion Issued: October 18, 2005

*Harvey & Mahoney, P.A.*, of Manchester (*J. Campbell Harvey* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*L. Jonathan Ross* and *Elizabeth M. Leonard* on the brief, and *Ms. Leonard* orally), for the respondent.

*Judith A. Roman*, of Concord, by brief, as guardian ad litem for the minor children.

DUGGAN, J. This is an interlocutory appeal from an order of the Superior Court (*Mangones*, J.), approving the recommendation of the Marital Master (*Leonard S. Green*, Esq.), denying the guardian ad litem's (GAL) motion to seal the therapy records of the parties' children. We reverse and remand.

We accept the facts as presented in this interlocutory transfer and additional facts that are undisputed by the parties. The petitioner-mother, Kathleen Quigley Berg, and the respondent-father, Eugene E. Berg, are divorced. Pursuant to the final divorce decree, they have joint legal custody of their four children, whose ages range from eleven to seventeen. The mother has primary physical custody, while the father has specific custodial time with the children.

After entry of the final divorce decree, the children at times did not visit the father as scheduled, because either they refused to do so or they were not made available for visitation by the mother. The children reported to the mother instances of alleged inappropriate conduct by the father and

their reasons for not wanting to visit. As a result, the mother arranged for individual counseling to address each child's resistance to visitation and his relationship with the father. Three children remain in regular individual counseling. Each child's therapist has invited the parents to participate in the counseling.

The father filed a contempt motion, alleging that the mother has interfered with his relationship with the children and has alienated them from him. The mother filed a cross-motion to modify the visitation schedule. A GAL was appointed to represent the children's interests. In connection with the contempt motion, the father requested that the children's therapists produce their records and notes for his inspection, arguing that he would find evidence of the mother's alleged interference with visitation. The children's therapists refused, contending that disclosure of the records is not in the best interests of the children.

The GAL moved to seal the children's records. The mother assented, but the father objected. The superior court denied the motion, ruling that the legal right of a custodial parent to access his children's medical records overrides the children's privacy rights, even if the father's assertion of his rights "might objectively be looked upon as harmful to the children." The GAL's motion for reconsideration was also denied. This interlocutory appeal followed. The superior court transferred the following questions:

1. Do children have a right to privacy for their medical records and communications?
2. Does the court have the authority to seal the therapy records of the parties' minor children when one parent demands access to the records for purposes of litigation?
3. Should the court have the authority to seal the therapy records of minor children when the parents are in conflict about the release and access to such records?

The father urges us to answer all questions presented in the negative, arguing that: (1) a parent's fundamental right to raise his or her children is paramount to the privacy rights minor children may have in their medical records; (2) minor children are not protected by the therapist-client privilege or, if they are, the privilege is conferred exclusively upon their parents; (3) the mother waived her right to object to disclosure of the records when she raised the matter of the importance of the therapists' testimony; (4) the father's constitutionally protected right to confront and cross-examine adverse witnesses compels disclosure of the records; and (5) federal regulations regarding the privacy of individually identifiable health information prohibit denying a parent access to his or her children's

personal health information. We answer all three questions in the affirmative.

*I. The Rights of the Parent*

The trial court denied the motion to seal without specifically deciding whether the records were protected by the therapist-client privilege. Instead, the trial court denied the motion based solely upon the father's constitutional right as a parent to have access to the records. Because this issue poses a question of constitutional law, we review it *de novo*. *State v. McLellan*, 149 N.H. 237, 240 (2003).

The father argues that his fundamental right to raise his children, as provided by the State and Federal Constitutions, overrides any rights his children may have in the privacy of their own therapy records. We first address the father's claim under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

The right of biological parents to raise and care for their children is a fundamental liberty interest protected by Part I, Article 2 of the New Hampshire Constitution. *In the Matter of Nelson & Horsley*, 149 N.H. 545, 547 (2003). Similarly, the United States Supreme Court has recognized that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion).

The State, however, does have "a competing interest in the welfare of children within its jurisdiction, and may, as *parens patriae*, intervene in the family milieu if a child's welfare is at stake." *Preston v. Mercieri*, 133 N.H. 36, 40 (1990). "[P]arental rights are not absolute, but are subordinate to the State's *parens patriae* power, and must yield to the welfare of the child." *Id.* Particularly in the context of divorce and custody litigation, the superior court often must weigh the rights of parents against the best interests of the children. *See* RSA 458:17, II, V, VI (2004), *repealed and replaced by* RSA 461-A:6 (Supp. 2005). Thus, the superior court has the authority to determine whether it is in the best interests of a child involved in a custody dispute to have confidential and privileged therapy records revealed to his or her parents. Accordingly, we reject the father's argument that the child's privacy interests automatically yield to a parent's right to raise and care for his or her children.

The Federal Constitution offers the father no greater protection than does the State Constitution under these circumstances. *See Preston*, 133 N.H. at 40; *Parham v. J. R.*, 442 U.S. 584, 602-04 (1979). Accordingly, we

reach the same result under the Federal Constitution as we do under the State Constitution.

*II. The Rights of the Children*

The father argues that minor children are not protected by the therapist-client privilege, as codified in RSA 330-A:32 (2004), because the statute does not expressly confer the privilege upon them. "In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole." *State v. Kidder,* 150 N.H. 600, 602 (2004). We construe the statute's language according to its plain and ordinary meaning. *Remington Invs. v. Howard,* 150 N.H. 653, 654 (2004).

RSA 330-A:32 provides, in pertinent part: "The confidential relations and communications between any [licensed mental health practitioner] and such licensee's client are placed on the same basis as those provided by law between attorney and client ...." "Client" is defined as "a person who seeks or obtains psychotherapy." RSA 330-A:2, III (2004). The statute does not define the term "person." *See* RSA 330-A:2. However, the plain meaning of "person" does not exclude minors. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1686 (unabridged ed. 2002). We also note that the statute does not use the word "adult." *See* RSA 330-A:2, :32. "Adult" is defined in RSA 21:44 (2000) as "those persons who have attained the age of 18 years." We therefore reject the father's argument that, on its face, the statute excludes minors from its protection.

The father next argues that, absent language expressly conferring the therapist-client privilege upon minor children, we must conclude that the privilege is conferred exclusively upon the minor child's parents based upon their status as natural guardians, and thus only a parent may assert or waive the privilege on the child's behalf.

The statute does not identify who may claim the privilege on behalf of the client. *See* RSA 330-A:32. However, the statute places the therapist-client privilege upon the same basis as the lawyer-client privilege. *Id.; see also* N.H. R. Ev. 503(b). New Hampshire Rule of Evidence 502, which governs the lawyer-client privilege, specifically identifies who may claim the privilege. Rule 502(c) states that the lawyer-client privilege may be claimed on behalf of the client by, among others, the client himself, the client's guardian or conservator, or the client's lawyer. Similarly, we conclude that the therapist-client privilege may be claimed by, among others, the client, the client's guardian or the client's therapist.

We agree that a natural parent or parent who has legal custody of a child would qualify as the child's guardian, and thus could claim or waive

the privilege on behalf of the child. However, the father's argument that the parents have the exclusive right to assert or waive the privilege assumes that a parent will act solely with the child's best interests in mind. Unfortunately, this assumption may not always be warranted in the context of divorce and custody proceedings.

> Society expects that a mother and father are the ones most likely to be concerned with the best interests and well-being of their child and, under normal circumstances, this is true. However, when custody of the child becomes the subject of a bitter contest between mother and father, the personal interests of the contestants in almost all cases obliterate that which is in the best interests of the Child. It is at this point that it can be said the interests of both parents become potentially, if not actually, adverse to the child's interests.

*Bond v. Bond*, 887 S.W.2d 558, 560 (Ky. Ct. App. 1994). In the context of a custody dispute, "it is patent that [a] custodial parent has a conflict of interest in acting on behalf of the child in asserting or waiving the privilege of nondisclosure." *Nagle v. Hooks*, 460 A.2d 49, 51 (Md. 1983); *see also Attorney ad Litem v. Parents of D.K.*, 780 So. 2d 301, 306 (Fla. Dist. Ct. App. 2001). Where, as here, a parent is waiving or claiming the privilege on behalf of his or her child in the context of a child custody dispute, there is a distinct possibility that one, or even both, of the parents will exercise the power to waive or assert the child's privilege "for reasons unconnected to the polestar rule of 'the best interests of the child.'" *Nagle*, 460 A.2d at 51. "Where the privilege is claimed on behalf of the parent rather than that of the child, or where the welfare and interest of the minor will not be protected, a parent should not be permitted to either claim the privilege or, for that matter, to waive it." *In re M.P.S.*, 342 S.W.2d 277, 283 (Mo. Ct. App. 1961) (citation omitted), *quoted in State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 409 (Mo. 1996).

We recognize the tension in these cases between the rights and responsibilities of parents and the rights of children. Parents are often involved in nearly every aspect of their children's lives. However, there are situations in which the parents are the source of a child's distress, particularly in the divorce and custody context. Allowing parents unfettered access to their children's therapy records under all circumstances "may inhibit the child from seeking or succeeding in treatment," *Parents of D.K.*, 780 So. 2d at 310, or, even worse, result in "substantial emotional harm to the child from a forced disclosure," *In re Daniel C.H.*, 269 Cal. Rptr. 624, 631 (Ct. App. 1990). Furthermore, denying a minor the opportunity to at least object to the involuntary

disclosure of his or her therapy records in the context of a child custody dispute "can only have a negative effect on the minor's relationship with ... the therapist ... and would often taint the minor's perception of the fairness of the legal process." *S.C. v. Guardian ad Litem*, 845 So. 2d 953, 960 (Fla. Dist. Ct. App. 2003).

Although New Hampshire's therapist-client privilege statute is modeled on the attorney-client privilege, there are separate and distinct policy considerations underpinning the therapist-client privilege. The New Jersey Supreme Court highlighted these differences in analyzing its own psychologist-patient privilege statute, also modeled on the attorney-client privilege.

> [T]he public policy behind the psychologist-patient privilege is in some respects even more compelling.... The psychologist-patient privilege ... serves to protect an individual's privacy interest in communications that will frequently be even more personal, potentially embarrassing, and more often readily misconstrued than those between attorney and client. Made public and taken out of context, the disclosure of notes from therapy sessions could have devastating personal consequences for the patient and his or her family .... Especially in the context of matrimonial litigation, the value of the therapist-patient relationship and of the patient's privacy is intertwined with one of the most important concerns of the courts—the safety and well-being of the children and families.

*Kinsella v. Kinsella*, 696 A.2d 556, 584 (N.J. 1997).

Indeed, the public policy behind the therapist-client privilege may be even more compelling than that behind the usual physician-patient privilege.

> Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.

*Jaffee v. Redmond*, 518 U.S. 1, 10 (1996). "Many physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a psychiatrist must have his patient's confidence or he cannot help him." *In re Brenda H.*, 119 N.H. 382, 386 (1979) (quotation

omitted), *superseded on other grounds as recognized by In re Tracy M.,* 137 N.H. 119, 123-24 (1993).

By fostering productive relationships between therapists and their clients, the therapist-client privilege "[advances] the public good accomplished when individuals are able to seek effective mental health counseling and treatment." *Kinsella,* 696 A.2d at 566. There is a serious risk that permitting parents unconditional access to the therapy records of their children would have a chilling effect on the therapist-client relationship, thus denying the children access to productive and effective therapeutic treatment. "[T]he mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment. . . . [It is] difficult if not impossible for [a psychotherapist] to function without being able to assure . . . patients of confidentiality and, indeed, privileged communication." *Jaffee,* 518 U.S. at 10 (quotation omitted).

The weight of authority in other jurisdictions supports protection for the therapy records of children who are at the center of a custody dispute or whose interests may be in conflict with those of their natural guardians. *See, e.g., Attorney ad Litem v. Parents of D.K.,* 780 So. 2d 301 (Fla. Dist. Ct. App. 2001) (seventeen-year-old child could assert privilege over her parents' joint waiver in child custody dispute); *Bond v. Bond,* 887 S.W.2d 558, 560-61 (Ky. Ct. App. 1994) (in child custody dispute, neither parent may assert the privilege on the child's behalf, and the court may interview the therapist or appoint a guardian ad litem for the sole purpose of recommending whether and to what extent the privilege should be waived); *Nagle v. Hooks,* 460 A.2d 49 (Md. 1983) (parents involved in a custody dispute cannot agree or refuse to waive the privilege on a minor child's behalf, and the court must appoint a guardian to act, guided by the best interests of the child); *cf. In re Daniel C.H.,* 269 Cal. Rptr. 624, 629-33 (Ct. App. 1990) (in dependency proceeding, where parent was accused of molesting his minor child, policy considerations regarding parental conflict of interest and potential harm to the child as a result of disclosure prevented parent from waiving the privilege on behalf of the minor child); *S.C. v. Guardian ad Litem,* 845 So. 2d 953, 956-60 (Fla. Dist. Ct. App. 2003) (in dependency proceeding, minor child could assert the privilege against guardian ad litem); *In re Adoption of Diane,* 508 N.E.2d 837, 840 (Mass. 1987) (in adoption proceeding, where the parent and child had potentially conflicting interests and there was uncertainty concerning the parent's ability to further the child's best interests, parent was not allowed to exercise the privilege on the child's behalf, although a neutral guardian could assert or waive it); *In re M.P.S.,* 342 S.W.2d 277, 283 (Mo. Ct. App. 1961) (in neglect proceeding, accused parent could not claim child's

physician-patient privilege to prevent child's doctor from testifying regarding child's injuries).

We conclude that parents do not have the exclusive right to assert or waive the privilege on their child's behalf. The trial court has the authority and discretion to determine whether assertion or waiver of the privilege is in the child's best interests. We refrain from establishing a detailed procedure through which the privilege should be waived or asserted, and instead leave that determination to the sound discretion of the trial court. However, when a privilege issue arises, the trial court must engage in fact-finding to determine whether waiver or assertion of the privilege is in the best interests of the child, with particular emphasis on preservation of the child's ability to engage in open and productive therapeutic treatment. The attempted assertion or waiver of the child's privilege by anyone, including the child, the child's parent or guardian, the child's guardian ad litem, or the child's therapist, will not be determinative.

The trial court may, within its sound discretion, find that a child is of sufficient maturity to make a sound judgment about the assertion or waiver of his therapist-client privilege. *See Attorney ad Litem v. Parents of D.K.*, 780 So. 2d 301, 308 (Fla. Dist. Ct. App. 2001); *cf. Butterick v. Butterick*, 127 N.H. 731, 735 (1986) (regarding maturity of a minor to make a sound judgment about his proper custody). Age alone is not determinative of this ability. *Cf. Butterick*, 127 N.H. at 735. In finding that the child is sufficiently mature to make a sound judgment, the trial judge must consider the following factors: (1) the child's age, intelligence, and maturity; (2) the intensity with which the child advances his preference; and (3) whether the preference is based upon undesirable or improper influences. *Cf. id.* at 734-35. Based on this finding, the judge may then give substantial weight to the preference of the mature minor to either waive or assert his privilege. *Cf. id.* at 735.

This is consistent with the legislative recognition that there are circumstances in which a minor may make decisions without the involvement of his or her parents. *See, e.g.*, RSA 318-B:12-a (2004) (authorizing any minor twelve years of age or older to enter drug rehabilitation without the consent of a parent). "[M]inors do have rights which they can assert themselves in their own best interest" without the involvement of their parents. *Parents of D.K.*, 780 So. 2d at 305. Even if the parents and the guardian ad litem agree that the child's privilege should be waived, the child has a separate interest that the court must consider, and if the minor is mature enough to assert the privilege personally, that assertion may be given substantial weight. *Cf. Butterick*, 127 N.H. at 735.

■ The trial court may also, within its sound discretion, appoint a guardian ad litem, regardless of the child's maturity, for the purpose of determining whether the privilege should be asserted. To that end, the court may rely upon the existing guardian ad litem, or appoint an independent guardian ad litem to address only the privilege issue.

■ In the case at hand, the GAL has asserted the children's therapist-client privilege on their behalf. The GAL has done so without having had access to the actual records. We recognize that in some cases, a guardian ad litem may be unable to make an informed decision regarding assertion or waiver of the therapist-client privilege without viewing the child's therapy records. In such a case, it is within the trial court's discretion to grant a guardian ad litem access to the records solely for the purpose of determining whether waiver or assertion of the therapist-client privilege is in the best interests of the child. It is also within the discretion of the trial court to conduct an *ex parte*, *in camera* review of the records for the same purpose.

■ The father argues that, if the GAL obtains access to the children's therapy records for any reason, those records would then be open to discovery by both parties pursuant to *Ross v. Gadwah*, 131 N.H. 391 (1988). However, our decision in *Ross* was limited to the guardian ad litem's role in custody determinations and the parent's right to confront the guardian ad litem regarding the basis for his or her custodial recommendations. To the extent that a guardian ad litem may assist the court solely regarding the waiver or assertion of a child's therapist-client privilege, as opposed to broader questions of custody and visitation, *Ross* is inapplicable. If the trial court is concerned that viewing the therapy records may taint a previously-appointed guardian ad litem's ultimate recommendation regarding custody or visitation, it may choose to appoint an independent guardian ad litem solely for the purpose of representing the child's best interests with regard to the therapist-client privilege. *See* RSA 461-A:16 (Supp. 2005); RSA 464-A:41 (Supp. 2005).

*III. Waiver*

■ The father argues that the mother waived her right to object to disclosure of the records because she initially raised the importance of the testimony of the children's therapists in her motion for modification. As explained above, neither parent is in a position to assert or waive the children's right to confidentiality of their records. Therefore, even if the mother has waived her own right, as a litigant, to object to disclosure, she has not effected a waiver of the GAL's right to object on behalf of the children.

## IV. Right of Confrontation

The father argues that he has a constitutionally protected right to confront and cross-examine adverse witnesses in the pending proceedings, specifically the therapists and the GAL. However, unless and until any of the therapists testifies in this case or the GAL obtains access to the records at issue and relies upon them in making recommendations regarding custody and visitation, the issue of confrontation and cross-examination is not ripe for review. *See Petition of State of N.H. (State v. Fischer)*, 152 N.H. 205, 210 (2005).

## V. The HIPAA Privacy Rules

The United States Department of Health and Human Services has promulgated rules regarding the privacy of individually identifiable health information, pursuant to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996). 45 C.F.R. §§ 164.500-.534 (HIPAA Privacy Rules). The father argues in his brief that section 164.502(g) of the HIPAA Privacy Rules prohibits denying a parent access to his children's personal health information. We disagree.

Section 164.502(a)(2) of the HIPAA Privacy Rules requires a health care provider to disclose protected health information to the health care recipient at the health care recipient's request. In certain circumstances, the health care provider is also required to disclose such information to the personal representative of the health care recipient at the personal representative's request. *See id.* § 164.502(g)(1) (requiring the health care provider to treat the personal representative of a health care recipient as the recipient for the purpose of obtaining information and records).

For an unemancipated minor, a parent, among others, must be treated as the minor's personal representative, so long as the parent, under applicable law, has the authority to act on behalf of the minor in making decisions related to health care. *Id.* § 164.502(g)(3)(i). However, the health care provider may not disclose or provide access to protected health information about an unemancipated minor to a parent if doing so is "prohibited by an applicable provision of State or other law, including applicable case law." *Id.* § 164.502(g)(3)(ii)(B). In the context of this case, the therapist-client privilege statute prohibits the father from obtaining access to his children's therapy records absent court order.

Furthermore, section 164.502(g) permits the health care provider to withhold information from a parent, even where the disclosure of such information is not prohibited by state law, if the health care provider, "in the exercise of professional judgment, decides that it is not in the best

interest of the [health care recipient] to treat the [parent] as the [health care recipient's] personal representative." *Id.* § 164.502(g)(5)(ii). Therefore, section 164.502(g) of the HIPAA Privacy Rules does not create an absolute right in the father to access his children's therapy records.

### VI. Need for Disclosure

The father argues that even if we hold that the children's therapy records are not discoverable, we must articulate a standard to protect his constitutional interests. However, the trial court made no findings on this point and it was not one of the questions transferred from the trial court in the interlocutory appeal. Therefore, we do not address it.

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.