*1035 OPINION OF THE COURT
Kenneth R. Fisher, J.
This amended decision and order is in support of the determination and order from the bench on October 2, 2012, in the course of trial of this matter, to confiscate the notes and records of the child’s psychiatrist and clinical psychologist, obtained by the father via a HIPAA release only, without the aid of the court for use in a custody battle.
In the context of a child custody proceeding within a matrimonial action, communications between an unemancipated minor and her therapist may not be disclosed to the parties or counsel in the absence of judicial process sufficient to afford the court opportunity to exercise its obligation to determine “the bests interests of the child” in its role “as parens patriae in determining the custody of a minor child” (Perry v Fiumano, 61 AD2d 512, 517 [4th Dept 1978]), and for the child, through the attorney for the child, to assert her statutory privilege protecting such disclosure. Consequently, records obtained without a judicial subpoena duces tecum or other court order are information improperly or irregularly obtained, and they must be returned to the therapist or otherwise destroyed. (CPLR 3103.)
The parties here, in the context of their divorce action, are contesting custody of their two children: S., now 12; and E., now 9. During the custody portion of the trial it was revealed to the court that the notes and records of E.’s treating clinical psychologist, and separately her psychiatrist, were provided to plaintiffs counsel outside of any judicial process on the mere proffer of a release, pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), signed by plaintiff. Plaintiffs counsel advised the court that he informed the attorney for the child by telephone that he intended to seek these notes and records from each provider. While acknowledging that he was aware of plaintiffs counsel’s intentions, the attorney for the child took no action.
The notes, records and communications here are subject to the patient/psychotherapist privilege embodied in CPLR 4504 (confidences to a psychiatrist), and CPLR 4507 (confidences to a psychologist).[1] The shared purpose of these statutes is to encour *1036 age “the patient or client fully to disclose the nature and details of his illness or his emotions without fear of later revelation by one in whom he placed his trust and confidence.” (Perry v Fiumano, 61 AD2d at 516.) The existence and purpose of the statutory privilege is eviscerated when, in the context of a custody proceeding, access to a psychiatrist’s and therapist’s notes is obtained via an ex parte, self-help measure such as a HIPAA release executed by one of the parents. (Compare Matter of Ascolillo v Ascolillo, 43 AD3d 1160, 1161 [2d Dept 2007], with Matter of Billings v Billings, 309 AD2d 1194 [4th Dept 2003] [both of which condition admission of a child therapist’s testimony on the law guardian’s consent or a determination that the testimony was in the child’s best interests].)
Plaintiff argues that the attorney for the child was on notice that he intended to obtain the therapists’ records and that it was his obligation to positively assert the patient/ psychotherapist privilege on behalf of his client and did not do so. According to plaintiffs view, he was thus free to obtain the records. This argument is not persuasive as it ignores the existence and purpose of the privilege which attaches to the records at issue, and the court’s role as parens patriae in determining the best interests of the child in a custody matter. “The court’s duty as protector of children is deeply rooted in Anglo-American law and transcends other public policy interests. Indeed, it has been held that the rule of comity ‘must yield when it conflicts with the dominant domestic duty of the court to guard the welfare of its wards.’ ” (Perry v Fiumano, 61 AD2d at 517-518, quoting Matter of Bachman v Mejias, 1 NY2d 575, 581 [1956].) Thus, “[t]he trial court has the authority and discretion to determine whether assertion or waiver of the privilege is in the child’s best interests.” (In re Berg, 152 NH 658, 666, 886 A2d 980, 987 [2005].) Consequently, a party seeking to obtain privileged material as it pertains to a minor child is obliged to utilize a judicial process sufficient to give notice to the court and the treatment provider via motion or an application for a judicial subpoena duces tecum on notice to the parties and treatment provider. Such a process would also have fulfilled the reasonable expectation of the law guardian, in the midst of litigation and on the eve of trial, that a formal process would be utilized, thereby providing him with sufficient information to make an informed evaluation of whether it was in the interest of his client to assert the available statutory privileges or at least demand an in camera inspection by the court to determine *1037 whether a waiver of the privilege would be in the best interests of the child.
Such an assertion of a privilege, whether by the attorney for the child or the court in parens patriae, necessarily involves a judicial determination. The “waiver or suspension of statutory privileges is a drastic remedy which should only be granted upon a showing by the party seeking the examination of the protected records that a party’s mental or emotional condition is in controversy.” (Perry v Fiumano, 61 AD2d at 517.) That a judicial determination must be made was underscored in the very next sentence in the just quoted case: “The affidavits seeking such relief ‘must contain evidentiary matter and not mere conclusory statements.’ ” (Id., quoting Koump v Smith, 25 NY2d 287, 300 [1969]; see also id. at 519 [“these privileges may not cavalierly be ignored or lightly cast aside”].)[2] In this case, the precise question is whether the communications at issue were material and necessary to the court’s determination of the child’s best interests such that the privilege should be suspended, waived, or exercised. “That [a] determination must be based solely upon the best interests of the child in accordance with the standard expected of a wise, affectionate and careful parent” (Perry v Fiumano, 61 AD2d at 517 [citation and internal quotation marks omitted]) suggests that a judicial determina *1038 tion is required instead of a unilateral decision on behalf of the child via execution of a HIPAA release by a conflicted parent then engaged in a bitter custody battle. “In the context of a custody dispute, ‘it is patent that [a] custodial parent has a conflict of interest in acting on behalf of the child in asserting or waiving the privilege of nondisclosure.’ ” (In re Berg, 152 NH at 663, 886 A2d at 985, quoting Nagle v Hooks, 296 Md 123, 127-128, 460 A2d 49, 51 [1983].)
In this case, the court permitted testimony from both the psychologist and psychiatrist, finding this testimony to be material and necessary to the court’s determination of custody. This is not to say, however, that such a determination would have resulted from a proper application in connection with the notes and records of the psychologist and psychiatrist. The court is conscious that, in a divorce and custody contest, parents can frequently be the source of a child’s distress.
“Allowing parents unfettered access to their children’s therapy records under all circumstances ‘may inhibit the child from seeking or succeeding in treatment,’ [Attorney ad Litem for D.K. v Parents of D.K., 780 So 2d 301, 310 (Fla Dist Ct App 2001)], or, even worse, result in ‘substantial emotional harm to the child from a forced disclosure.’ ” (In re Berg, 152 NH 658, 663, 886 A2d 980, 985 [2005], quoting In re Daniel C.H., 220 Cal App 3d 814, 828, 269 Cal Rptr 624, 631 [1990].)
“Furthermore, denying a minor the opportunity to at least object to the involuntary disclosure of his or her therapy records in the context of a child custody dispute ‘can only have a negative effect on the minor’s relationship with . . . the therapist . . . and would often taint the minor’s perception of the fairness of the legal process.’ ” (152 NH at 663-664, 886 A2d at 985-986, quoting S.C. v Guardian ad Litem, 845 So 2d 953, 960 [Fla Dist Ct App 2003].)
To this, the court adds the observation that the minor’s perception of the therapist/patient relationship will also be tainted by such informal voluntary disclosure to a parent. “Effective psychotherapy, by contrast [with treatment of physical ailments], depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.” (Jaffee v Redmond, 518 US 1, 10 [1996] [adding that “the mere possibil *1039 ity of disclosure may impede development of the confidential relationship necessary for successful treatment”].)[3]
Here, the child’s clinical psychologist so testified in forceful terms when explaining why she suspended the child’s therapy sessions pending resolution of the custody dispute, and why she doubted whether she could successfully continue therapy with the child if it was ever disclosed to her that the confidences promised to her had been breached. At first, she resisted disclosure to plaintiff and his attorney, employing the above arguments in an effort to persuade each to withdraw the request. When they persisted, the therapist consulted her association counsel as she had done in similar instances before. Although on these prior instances counsel’s office advised her not to disclose if she felt the child’s therapy would suffer thereby, this time counsel’s office advised that she must turn the records and notes over to a minor child’s parent pursuant to the HIPAA release (but see discussion below). As a result of this advice, she sent copies of the records to plaintiffs counsel and copied in defense counsel and the law guardian. The psychiatrist testified that she believed a minor child’s parents had an unfettered right to disclosure, although she conceded that she had not before been involved in a custody litigation. Fortunately, no counsel shared the records and notes with their clients before the court intervened during the trial.
The psychologist testified that her notes, taken in the course of therapy, contained sensitive information revealed by the child in confidence. She testified further that, should the child learn that these confidences were revealed to her parents through the psychologists’ notes, the therapeutic relationship with the child “would be destroyed.” At trial, the psychologist stated that her testimony did not reveal, nor would she reveal, any of E.’s confidences. Certainly the court would have, under its duty as parens patriae, come to the same conclusion and does so now.[4]
The HIPAA statute does not support the argument that a therapist must in all cases give a parent access to his or her *1040 minor child’s personal health records in the context of custody litigation. In the case of In re Berg, the court rejected such an argument. First, under 45 CFR 164.502 (g), “the health care provider may not disclose or provide access to protected health information about an unemancipated minor to a parent if doing so is ‘prohibited by an applicable provision of State or other law, including applicable case law.’ ” (In re Berg, 152 NH at 668, 886 A2d at 989, quoting 45 CFR 164.502 [g] [3] [ii] [B].) For this case, the existence of the statutory privilege under the CPLR and the cases of Matter of Ascolillo v Ascolillo (43 AD3d 1160 [2007]), Matter of Billings v Billings (309 AD2d 1194 [2003]), and Perry v Fiumano, taken together, establish that unfettered access to a minor child’s protected therapy and psychiatric records may not be had by the simple expedient of a parent’s HIPAA release proffered in the midst of a contested custody proceeding. Accordingly, the HIPAA patient/personal representative access rules do not override state privilege statutes, and the case law establishing the procedures designed to effectuate the purpose of the privilege statutes.[5]
Second,
“section 164.502 (g) permits the health care provider to withhold information from a parent, even where disclosure of such information is not prohibited by *1041 state law, if the health care provider, ‘in the exercise of professional judgment, decides that it is not in the best interest of the [health care recipient] to treat the [parent] as the [health care recipient’s] personal representative. ’ ” (In re Berg, 152 NH at 668-669, 886 A2d at 989 [bracketed material in original], quoting 45 CFR 164.502 [g] [5] [ii].)
“Therefore, section 164.502 (g) of the HIPAA Privacy Rules does not create an absolute right in the father to access his children’s therapy records.” (152 NH at 669, 886 A2d at 989.) For these reasons, the legal advice given to the clinical psychologist was, unlike the well-informed advice she had been given in earlier cases, in error.
Accordingly, the court finds that it is in the best interests of the child that neither the parties nor their respective counsel have access to the notes and records of the clinical psychologist or psychiatrist and that all such records in the possession of either party or their counsel be returned to the provider or given to the attorney for the child for immediate destruction.

. CPLR 4508 provides a similar privilege protecting the confidential communications made to a person licensed as a licensed master social worker or a licensed clinical social worker under the provisions of article 154 of the Education Law.

. Similarly, the importance of a judicial determination was stressed in People ex rel. Hickox v Hickox (64 AD2d 412 [1st Dept 1978]), in which the Court described the necessity of an in camera examination of the records:
“[T]here shall be no disclosure of such records to adverse parties, except to the extent that the Special Term shall direct, in the light of the circumstances then existing. In making such direction, the Justice shall consider any psychiatric testimony offered or proposed; whether there has been a waiver of privilege; and whether the records are material and necessary for the purpose of determining custody, or whether the court and the parties have sufficient information to determine future custody without such disclosure or perhaps even preliminary examination by the Justice himself. Before permitting disclosure of these records or any part of them to the parties, the Special Term Justice shall himself examine the records and determine which if any parts of the records shall be disclosed. In our view, the power of the Justice to permit appropriate disclosure for the purposes of the custody proceeding or to make a preliminary examination of the records himself does not depend solely on whether or not there has been a waiver of the privilege.” (Id. at 415-416.)
Though these cases concern treatment records of one of the parties/parents, a fortiori these principles apply when the issue concerns a minor child’s therapy or psychiatric records. (Cf. Matter of Charles RR., 166 AD2d 763, 764 [3d Dept 1990].)

. “ ‘The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame.’ ” (Taylor v United States, 222 F2d 398, 401 [DC Cir 1955], quoting Guttmacher and Weinhofen, Psychiatry and the Law at 272 [1952].) When the patient is a vulnerable minor child, as all testimony and the parties agree that this child is, these considerations have significantly greater force.

. Additionally, section 3103 of the CPLR provides the court with broad authority to condition, limit or deny the use of any disclosure device to prevent prejudice to any person.

. In In re Berg, the privilege statute “prohibit[ed] the father from obtaining access to his children’s therapy records absent court order.” (152 NH at 668, 886 A2d at 989.) Here, no such procedure is described specifically by statute, but to prevent wholesale evisceration of the privilege, the cases cited immediately above and especially Perry v Fiumano, taken together with the statute, must be taken as establishing that court intervention is required. This court suggests that the privilege statutes be amended specifically to provide for court intervention on behalf of the best interests of the child, and that law guardians pay special attention to Fourth Department Guidelines for Counsel for the Child in Custody and Visitation Proceedings, part D (9) (New York State Supreme Court, Appellate Division, Fourth Department, Guidelines for Attorneys for Children in the Fourth Department at 43, http:// www.nycourts.gov/courts/ad4/AFC/AFC-guidlines.pdf [“attorney for the child should seek protective orders when other litigants attempt access, by subpoena or otherwise, privileged and confidential communications made by the child” (emphasis supplied)]; compare part D [12] at 43 [“(i)f necessary, the attorney for the child should subpoena the records and reports of physicians, therapists, schools, and teachers”]). This court believes that the latter quoted provision should be amended to provide that such a duty be conditioned on an informed decision, with court participation, concerning whether the child’s privilege should be waived in the circumstances, as contemplated in Matter of Ascolillo v Ascolillo and Matter of Billings v Billings. Similarly, part F (2) should be amended to provide for the possibility of an appropriate waiver at trial after a considered decision by the law guardian.